**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-7200
E-Mail: ltfisher@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZA TAYLOR, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CONVERSENOW TECHNOLOGIES, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiff Eliza Taylor ("Plaintiff") brings this action individually and on behalf of all others similarly situated against Defendant ConverseNow Technologies, Inc. ("ConverseNow"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a putative class action against Defendant arising from Defendant intentionally tapping in real time, electronically or otherwise, the lines of telephone communications between Plaintiff and members of the Classes on the one hand, and the entities with whom Plaintiff and members of the Classes were communicating with on the other hand.

2. One such entity is Domino's Pizza ("Domino's").

3. When customers call Domino's restaurants in California, an automated system records, takes, and routes customers' orders. However, unbeknownst to customers, their communications are routed through the servers of ConverseNow to, among other things, assist Domino's with fulfilling orders and upselling its customers, and to improve the capabilities of ConverseNow's own technology.

4. In doing so, Domino's and other businesses utilizing Defendant's technology permitted Defendant ConverseNow to read, attempt to read, learn, and/or use the communications of Domino's customers without prior consent, thus violating the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631 and 632.

5. Plaintiff brings this action on behalf of all persons in California whose communications were intercepted and recorded by ConverseNow. Plaintiff also brings this action on behalf of a subclass of all persons in California who called Domino's, and whose communications were intercepted and recorded by ConverseNow.

## PARTIES

6. Plaintiff Eliza Taylor is a citizen of California residing in Oakland, California. In or around September 2024, Plaintiff Taylor placed an order for delivery pizza with the Domino's Pizza store located in Delano, California. This location employs Defendant's Voice AI technology.

1  Upon calling the number Domino's lists for that location, (510) 536-3200, an automated voice
2  answered saying "Thank you for calling Domino's. How can I help you today?" Plaintiff Taylor
3  proceeded to place her order with Domino's, which unbeknownst to her, was being intercepted in
4  real time and wiretapped by Defendant ConverseNow.

5   7.   During the course of the phone call, Plaintiff provided her name, address, and credit
6  card information. In doing so, Plaintiff reasonably expected this personal and confidential
7  information to be shared only with Domino's, whom she believed was the only other party to the
8  call.

9   8.   The automated voice Plaintiff Taylor spoke to was that of ConverseNow's Voice AI
10 technology enabled by Domino's to process Plaintiff's order. ConverseNow wiretapped Plaintiff's
11 conversation with Domino's. Plaintiff was not on notice of any wiretapping when she called
12 Domino's, nor did she provide prior consent to the same.

13  9.   Defendant ConverseNow Technologies, Inc. is a Delaware corporation with its
14 principal place of business in Austin, Texas. ConverseNow "proudly operate[s] in more stores than
15 any other restaurant voice AI company" and "processes millions of live conversations each
16 month."

## JURISDICTION AND VENUE

18  10.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A)
19 because this case is a class action where the aggregate claims of all members of the proposed class
20 are in excess of $5,000,000.00, exclusive of costs and interest, and Plaintiff, as well as members of
21 the proposed class, are citizens of states different from Defendant.

22  11.  This Court has personal jurisdiction over Defendant ConverseNow because
23 ConverseNow conducts substantial business in the State of California, including with Domino's,
24 which gives rise to this action.

25  12.   Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant
26 entered into contract in this District, and a substantial part of the events or omissions giving rise to
27 the claim occurred in this District.
28

**FACTUAL ALLEGATIONS**

**The California Invasion of Privacy Act**

13. The California Legislature enacted the Invasion of Privacy Act to protect certain privacy rights of California citizens. The legislature expressly recognized that "the development of new devices and techniques for the purpose of eavesdropping upon private communications … has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code § 630.

14. The California Supreme Court has repeatedly stated the "express objective" of CIPA is to "protect a person placing or receiving a call from a situation where the person on the other end of the line permits an outsider to tap his telephone or listen in on the call." *Ribas v. Clark*, 38 Cal. 3d 355, 364 (1985); *see also Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 200 (2021) (explaining that "a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device.").

15. As part of CIPA, the California Legislature introduced § 631(a), which prohibits any person or entity from (i) "intentionally tap[ping], or mak[ing] any unauthorized connection … with any telegraph or telephone wire," (ii) "willfully and without the consent of all parties to the communication … read[ing], or attempt[ing] to read, or to learn the contents or meaning of any … communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [California]," or (iii) "us[ing], or attempt[ing] to use … any information so obtained." CIPA § 631(a) also penalizes those who "aids, agrees with, employs, or conspires with any person" who conducts the aforementioned wiretapping.

16. The California Legislature also enacted CIPA § 632(a), which prohibits any person or entity from "intentionally and without the consent of all parties to a confidential communication, us[ing] an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication."

17. Individuals may bring an action against the violator of CIPA §§ 631 and 632 for $5,000 per violation. Cal. Penal Code § 637.3.

**ConverseNow Technology**

18. Defendant ConverseNow Technologies, Inc. is a Software as a Service (SaaS) company that is "shaping the future of restaurants" by "powering [its] best-in-class voice AI technology… for the restaurant industry and customer service, with a mission to take artificial intelligence to the next level."[1]

19. ConverseNow's website touts it is in over 1,250 stores in 43 states across the country and has processed over 24 million conversations.[2]

20. ConverseNow explains:

> Voice AI, or conversational AI, is the newest generation of artificial intelligence for restaurants – a huge step up from the frustrating interactions we've all had in the past when talking to automated phone systems. Introduced to guests as virtual ordering assistants, voice AI engages in limitless conversations at once: each with the personable, tailored approach that people expect when speaking to a team member.[3]

21. ConverseNow advertises its voice AI technology in a three-step process. First, "guests enjoy a natural conversation with a virtual assistant as they would with a typical team member." Next, "the order is sent into the cloud for your POS to process automatically." Lastly, "team members prepare and serve food as they would with any other order that comes in."[4]



---

[1] ConverseNow, About Us https://conversenow.ai/company/ (last accessed Jan. 21, 2025).
[2] *Id*.
[3] ConverseNow, Homepage https://conversenow.ai/ (last accessed Jan. 21, 2025).
[4] ConverseNow, Technology https://conversenow.ai/technology/ (last accessed Jan. 21, 2025).

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    4

22. Critically, ConverseNow agents are listening in on the calls:

> For restaurants getting started with voice AI, our agent-supported system also helps train your virtual assistants even faster. Agents put the finishing touches on complex orders when necessary, teaching the virtual assistant in the process so the AI can complete that type of order the next time around. In both cases, the order is processed to guests' satisfaction without your staff getting involved.[5]

23. In fact, ConverseNow "technology keeps a person behind the scenes in every conversation."[6]

24. Not only do ConverseNow's clients benefit from its technology, once ConverseNow intercepts the customer communications, it has the ability to use such communications for its own purposes, as it explains, "by processing millions of live conversations each month, our self-learning system evolves even faster every day to improve the guest experience for new and existing partners alike."[7]

25. To do so, "Voice AI uses natural language processing (NLP), natural language understanding (NLU), and machine learning algorithms to interpret and respond to speech, and to learn from these user interactions." This creates "a feedback loop where the voice AI platform continuously refines the underlying algorithms."[8]

26. Further, "voice AI assistants aren't merely executing simple, scripted actions. **Virtual assistants are dynamic conversationalists that recognize context clues, read between the lines and refine their algorithms with each order**. This means the ordering assistants learn to recommend relevant order suggestions and upsells based on prior guest orders. **Virtual ordering assistants record multiple guest orders** simultaneously across all ordering channels, so guests can enjoy the dining experience they're looking for even if the restaurant is otherwise short on

---

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] "Conversational AI vs. Legacy Phone Systems: How Voice AI Prevails" https://conversenow.ai/resources/conversational-ai-vs-legacy-phone-systems/ (last accessed Jan, 21, 2025).

physical staff."[9]

27. Continued sales of the ConverseNow technology and service are based on ConverseNow's ability to improve its software capabilities and reduce the need to employ its off-site agents to monitor and correct orders.

28. Information from communications, like Plaintiff's, is central to ConverseNow's ability to successfully market its technology to future clients.

29. The appeal to restaurant operators is apparent, as ConverseNow states:

> Missed calls, long wait times and inaccurate orders cost restaurants money and reputation. A restaurant that uses voice AI won't suffer these issues since **voice AI assistants automatically answer every call that comes in and accurately records guest orders in real-time**. Conversational AI also improves order fulfillment speed and increases total ticket sales from phone orders. Additionally, operators can reassign team members to food preparation or other tasks, leading to greater productivity.
>
> ---
>
> Restaurant virtual ordering assistants effortlessly receive and record orders, nearly doubling peak-hour volume while giving guests personalized and friendly service.[10]

30. ConverseNow further explains, "once up and running, orders taken by our virtual assistants will show up on your POS in the same way as any other order. Staff simply fulfill orders as usual, with no changes in operations other than never having to answer the phone or worry about drive-thru."[11]

31. In sum, ConverseNow has the capability to use caller communications to (i) improve its own products and services; (ii) develop new ConverseNow products and services; and (iii) analyze customers' communications to assist with avoiding the intervention of restaurant staff in the order process.

32. ConverseNow's voice AI technology is currently used in more than 1,250 stores

---

[9] "6 Franchise Trends that Restaurant Operators Need To Know" https://conversenow.ai/resources/franchise-trends/ (last accessed Jan. 21, 2025) (emphasis added).

[10] *Id.* (emphasis added).

[11] ConverseNow, Technology https://conversenow.ai/technology/ (last accessed Jan. 21, 2025).

nationwide, including over 120 Domino's stores nationwide, including in California.[12] The technology utilized is "custom-tailored for Domino's with quick and easy setup."[13]

**Custom-tailored for Domino's with quick and easy setup**

- Thoroughly trained in the Domino's menu with custom upsell
- Seamless cloud-based order processing that goes straight to Pulse
- Customizable for local promotions and coupons
- Quick, 3-step onboarding process gets you up and running in no time
- No staff training needed
- Direct integrations with Wizardline and your phone system

33. Domino's Pulse, referenced above, is a custom software system that helps Domino's Pizza manage in-restaurant operations and point-of-sale functions. Similarly, Domino's Wizardline is a data software that assists with payroll, pay cards, AI Ordering, hiring & retention, and more.[14]

34. As one Domino's store owner explained, "It was the flip of a switch. I didn't have to do anything. They routed everything through our existing phone stem. We went live with all four stores in one day and boom, it was done."[15]

**Defendant Violates the California Invasion of Privacy Act**

35. When a customer calls a store utilizing Defendant's technology, like Domino's, a

---

[12] ConverseNow, Info https://info.conversenow.ai/dfa-2 (last accessed Jan. 21, 2025).
[13] Id.
[14] Wizardline Reporting https://us.thewizardline.com/about-us/ (last accessed Jan. 21, 2025).
[15] Id.

virtual assistant on behalf of ConverseNow intercepts the call and asks the caller how they can be of assistance. When a customer states they would like to place an order, the virtual assistant responds, "let me transfer you to the order line." Although the phone number the customer called is that of a business they intend to place an order with, Defendant intercepts and redirects the call to its servers for recording. *See Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009) (holding interception occurs "when the contents of a wire communication are captured or redirected in any way.").

36. Within seconds, a virtual assistant introduces themselves using their "name" stating they are an employee of the store location the customer is calling and asks the customer what they would like to order today. Upon stating their order, the virtual assistant then asks the customer if they would like anything extra, including desserts. Once the customer indicates that their order is complete, the voice confirms the order with them.

37. Next, the virtual assistant asks the customer to provide their delivery address. After confirming the address, the voice prompts the customer for their credit card information.

38. During the duration of the call, the customer is never informed that ConverseNow is a party to the conversation.

39. ConverseNow's Voice AI is designed in such a way that customers believe they are only interacting solely with the restaurant they are calling to place their order. Customers are not notified prior to placing their order that their communications with the restaurant are being intercepted, recorded, and used by any third party.

40. ConverseNow's Voice AI was designed to record in real-time confidential phone conversations, and was designed to have the capability to analyze the same. As such, when Defendant provided its service to businesses like Domino's, it was Defendant's intention to record the communications of the restaurant's customers.

41. Restaurants like Domino's, likewise, fail to pursue or obtain prior consent, express or otherwise, from callers prior to allowing Defendant to record, examine, intercept, collect, and analyze the content of consumers' conversations.

42. In fact, Defendant's Terms and Conditions for its customers, like Domino's, provides that the customers "may not represent or imply to others that your Customer Data is in

any way provided, sponsored, or endorsed by ConverseNow."[16] The terms define Customer Data as "any and all information and content that a user submits to, or uses with, the Platform (e.g., data provided by you or your customers in connection with the Platform or Services provided by ConverseNow)."[17]

43.     In addition to helping companies like Domino's process their phone orders, ConverseNow aggregates this information with the information collected from all of its clients employing ConverseNow Voice AI at their businesses to improve the functionality of the technology, which increases the value of ConverseNow's services when they are offered to other companies.

44.     In fact, ConverseNow's Privacy Policy explicitly states that it uses information from callers to "improv[e] our ordering platform, advertisements, products, and services."[18] *Gladstone v. Amazon Web Servs., Inc.*, 2024 WL 3276490, at *6 (W.D. Wash. July 2, 2024) ("[T]he Court can infer that Defendant can use the data it collects to improve its own products and services, which shows that it is capable of creating, recording, and retaining data for purposes other than sending the data back to Capital One.") (internal citations omitted).

45.     Thus, the contractual agreement between businesses like Domino's and ConverseNow to wiretap Plaintiff's and Class Members' communications is done for the purpose of increasing profitability and efficiency, and by extension, the profits of both Defendant and its clients.

46.     Therefore, Defendant's conduct violates the rights of consumers set forth by CIPA §§ 631 and 632.

## CLASS ALLEGATIONS

47.     Plaintiff seeks to represent a class defined as all California residents who had the contents of their conversations intercepted and recorded by ConverseNow using its Voice AI

---

[16] ConverseNow, Terms and Conditions https://conversenow.ai/terms-and-conditions/ (last accessed Jan. 21, 2025)

[17] *Id*.

[18] ConverseNow, Privacy Policy https://conversenow.ai/privacy-policy/ (last accessed Jan. 21, 2025).

technology during the statute of limitations period (the "Class").

48. Plaintiff also seeks to represent a subclass defined as all California residents who had the contents of their conversations with Domino's intercepted and recorded by ConverseNow using its Voice AI technology during the statute of limitations period (the "Subclass").

49. The Class and Subclass shall be collectively referred to as the "Classes."

50. The following people are excluded from the Classes: (1) any Judge presiding over this action and members of the Judge's family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest (including current and former employees, officers, or directors); (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

51. **Numerosity:** The number of persons within the Classes are substantial and believed to amount to thousands, if not millions of persons. It is, therefore, impractical to join each member of the Classes as a named plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Classes renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation. Moreover, the Classes are ascertainable and identifiable from Defendant's records.

52. **Commonality and Predominance:** There are well-defined common questions of fact and law that exist as to all members of the Classes and that predominate over any questions affecting only individual members of the Classes. These common legal and factual questions, which do not vary between members of the Classes, and which may be determined without reference to the individual circumstances of any Class members, include, but are not limited to, the following:

(a) Whether Defendant violated CIPA §§ 631 and 632;

(b) Whether Defendant sought or obtained prior consent, express or

Case 3:25-cv-00990-SI     Document 1     Filed 01/30/25     Page 12 of 18

otherwise—from Plaintiff and the Classes; and

 (c) Whether Plaintiff and members of the Classes are entitled to actual and/or statutory damages for the aforementioned violations.

53. **Typicality:** The claims of the named Plaintiff are typical of the claims of the Classes because the named Plaintiff, like all other members of the Class, called a business using ConverseNow Voice AI technology and had the content of her confidential communications with the business recorded, stored, collected, read, analyzed, and/or examined by ConverseNow.

54. The claims of Plaintiff are typical of the claims of the Subclass because the Plaintiff, like all other Subclass members, called a Domino's stores and had the contents of her communications with Domino's recorded, stored, collected, read, analyzed, and/or examined by ConverseNow.

55. **Adequate Representation:** Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interest of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interest of members of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

56. **Superiority:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of members of the Classes. Each individual member of the Classes may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED 11

# CAUSES OF ACTION

## COUNT I
### Violation of the California Invasion of Privacy Act, Cal. Penal Code § 631(a)

57. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

58. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

59. CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192 (1978).

60. To establish liability under CIPA § 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> or
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
>
> or
>
> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
>
> or
>
> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

61. CIPA § 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the internet, and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to

effectuate its remedial purpose of protecting privacy); *see also Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications").

62. ConverseNow is not an extension of, or a tool used by, a business utilizing its technology. Rather, ConverseNow is a "separate legal entity that offer[] [a] 'software-as-a-service' and not merely [] passive device[s]." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). Defendant is intercepting and collecting the content of any conversation before said data is provided to the businesses that are the actual intended parties to the conversations. As Defendant's website explains, "guest enjoy a natural conversation with a virtual assistant" and "once [the conversation] is complete, the order is sent into the cloud[.]"[19]

63. Further, ConverseNow had the capability to use the wiretapped information for its own purposes. In fact, "[b]y processing millions of live conversations each month, [Defendant's] self-learning system evolves even faster every day to improve the guest experience for next and existing partners alike."[20] Moreover, Defendant "also obtain[s] information about [callers] from other third-party sources and combine[s] such information with the information [Defendant has] collected about them."[21]

64. Accordingly, ConverseNow was an unbeknownst third party to any communication between Plaintiff and members of the Classes on the one hand, and any entity Plaintiff and members of the Classes were communicating with, like Domino's, on the other. *Id*. at 521; *see also Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023).

65. At all relevant times, by using its Voice AI technology, Defendant intentionally tapped, electronically or otherwise, the lines of telephone communications between Plaintiff and members of the Classes, on the one hand, and the entities with whom Plaintiff and members of the Classes were communicating with, like Domino's, on the other hand while the electronic

---

[19] ConverseNow, Technology https://conversenow.ai/technology/ (last accessed Jan. 21, 2025)
[20] *Id*.
[21] ConverseNow, Privacy Policy https://conversenow.ai/privacy-policy/ (last accessed Jan. 21, 2025).

communications were in transit or were being sent from or received at any place within California.

66. At all relevant times, Defendant "records guest orders in real-time."[22]

67. At all relevant times, by using its Voice AI technology, ConverseNow willfully and without the consent of all parties to the communication, or in any unauthorized manner, read, attempted to read, and/or learned the contents or meaning of electronic communications of Plaintiff and members of the Classes, on the one hand, and the entities with whom Plaintiff and members of the Classes were communicating with, like Domino's, on the other, while the electronic communications were in transit or were being sent from or received at any place within California.

68. At all relevant times, ConverseNow used or attempted to use the communications intercepted by its Voice AI technology to improve its products and services and generate revenue for itself and its clients.

69. Plaintiff and members of the Classes did not provide their prior consent to Defendant or to businesses utilizing Defendant's Voice AI technology to allow ConverseNow's intentional access, interception, reading, learning, recording, collection, and usage of Plaintiff and members of the Classes communications.

70. The wiretapping of Plaintiff and members of the Classes occurred in California, where Plaintiff and members of the Classes called a Domino's pizza location or other business utilizing ConverseNow, and where ConverseNow, as enabled by Domino's or another business utilizing ConverseNow, intercepted Plaintiff's and members of the Classes' communications with the businesses the customers intended to call.

71. By virtue of its business, Defendant intended to wiretap Plaintiff and members of the Classes by contracting with businesses such as Domino's to use its technology.

72. Pursuant to Cal. Penal Code § 637.2, Plaintiff and members of the Classes have been injured by Defendant's violations of CIPA § 631(a), and each seeks statutory damages of $5,000 for each of Defendant's violations of CIPA § 631(a).

---

[22] "6 Franchise Trends that Restaurant Operators Need To Know" https://conversenow.ai/resources/franchise-trends/ (last accessed Oct. 1, 2024).

# COUNT II
### Violation of The California Invasion of Privacy Act,
### Cal. Penal Code § 632

73. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

74. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

75. California Penal Code § 632 prohibits an entity from:

> [I]ntentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio.

76. ConverseNow's Voice AI technology is an "electronic amplifying or recording device."

77. At all relevant times, ConverseNow intentionally used its Voice AI technology to eavesdrop on the confidential telephone communications between Plaintiff and members of the Classes, on the one hand, and the entities with whom Plaintiff and members of the Classes were communicating with, like Domino's, on the other. When communicating with Domino's or other business utilizing ConverseNow technology, Plaintiff and members of the Classes had an objectively reasonable expectation of privacy. Plaintiff and members of the Classes did not reasonably expect that anyone other than the business they were calling would be on the other end of the confidential communications, nor that a third party entity like ConverseNow would be eavesdropping on and recording the confidential communications.

78. Indeed, Plaintiff and members of the Classes calling Domino's and other businesses utilizing ConverseNow technology disclose their name, address, and credit card information. The sensitive nature of this information enhances their reasonable expectation of privacy because such sensitive information should not be disclosed to, nor intercepted by, third parties like ConverseNow. *See Smith v. YETI Coolers, LLC*, 2024 WL 4539578, at *5 (N.D. Cal. Oct. 21,

2024) ("Plaintiff has plausibly alleged that the sensitive financial information being recorded is the type that could be reasonably considered confidential."). This is especially true when financial information in combination with personal information such as name and address can be used together by a party to commit fraudulent acts.

79. In fact, ConverseNow's Privacy Policy confirms it collects this confidential information, including "payment instrument number (such as credit card number), the security code associated with their payment instruction."[23]

80. Plaintiff and members of the Classes did not provide their prior consent to Defendant or to businesses utilizing Defendant's Voice AI technology to allow ConverseNow's intentional access, interception, reading, learning, recording, and collection of Plaintiff's and members of the Classes' telephone communications.

81. The wiretapping of Plaintiff and members of the Classes occurred in California, where Plaintiff and members of the Classes called a business utilizing ConverseNow technology and where ConverseNow, as enabled by that business, routed Plaintiff's and members of the Classes' communications to ConverseNow's servers.

82. Pursuant to Cal. Penal Code § 637.2, Plaintiff and Class Members have been injured by Defendant ConverseNow's violations of CIPA § 632(a), and each seeks statutory damages of $5,000 for each of ConverseNow's violations of CIPA § 632(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a. For an order certifying the Class under Fed. R. Civ. P. 23 and naming Plaintiff as representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel;

b. For an order declaring Defendant's conduct violates the law referenced herein;

c. For an order finding in favor of Plaintiff and the Class and Subclass on the counts asserted herein;

---

[23] ConverseNow, Privacy Policy https://conversenow.ai/privacy-policy/ (last accessed Jan. 21, 2025).

      d.      For prejudgment interest on all amounts awarded;

      e.      For compensatory, punitive, and statutory damages in amounts to be determined by the Court and/or jury; and

      f.      For an order awarding Plaintiff and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: January 30, 2025          Respectfully submitted,

                                        **BURSOR & FISHER, P.A**.

                                        By:   */s/ L. Timothy Fisher*
                                                L. Timothy Fisher

                                        L. Timothy Fisher (State Bar No. 191626)
                                        1990 North California Blvd., 9th Floor
                                        Walnut Creek, CA 94596
                                        Telephone: (925) 300-4455
                                        Facsimile: (925) 407-7200
                                        E-Mail: ltfisher@bursor.com

                                        *Attorneys for Plaintiff*