**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZA TAYLOR, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CONVERSENOW TECHNOLOGIES, INC.,<br><br>Defendant. | Case No. 3:25-cv-00990-SI<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**<br><br>Date:   May 16, 2025<br>Time:  10:00 a.m. (remote)<br>Judge:  Hon. Susan Illston |

**TABLE OF CONTENTS**

PAGE

INTRODUCTION ..........................................................................................................................1

ARGUMENT .................................................................................................................................2

    I.    DEFENDANT VIOLATED CIPA § 631................................................................2

        A.    ConverseNow Is A Third-Party Wiretapper Of Plaintiff's Communications........................................................................................2

            1.    Defendant Is A Third-Party Wiretapper Under The "Capability" Approach, Which The Court Should Adopt........................................................................................3

            2.    Defendant Is Also A Third-Party Wiretapper Under The "Extension" Approach, Which The Court Should Reject .......................................................................5

        B.    Defendant Intercepted The Contents Of Plaintiff's Communications With The Nonparty Entities In Real Time .......................10

    II.    DEFENDANT VIOLATED CIPA § 632..................................................................12

    III.    DISMISSAL WITHOUT LEAVE TO AMEND IS IMPROPER............................14

CONCLUSION ............................................................................................................................14

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*AmerisourceBergen Corp. v. Dialysist W., Inc.*,
  465 F.3d 946 (9th Cir. 2006) ............................................................................................... 14

*Augustine v. Lenovo (United States), Inc.*,
  2023 WL 4938050 (S.D. Cal. Aug. 2, 2023) .......................................................................... 2

*Bales v. Sierra Trading Post, Inc.*,
  2013 WL 6244529 (S.D. Cal. Dec. 3, 2013) ........................................................................ 12

*Balletto v. Am. Honda Motor Co.*,
  2023 WL 7026931 (N.D. Cal. Oct. 24, 2023) .................................................................. 3, 6

*Balletto v. Am. Honda Motor Co.*,
  2024 WL 589090 (N.D. Cal. Feb. 13, 2024) ......................................................................... 5

*Berexa v. Target Corp.*,
  2024 WL 4374140 (E.D. Cal. Oct. 2, 2024) ........................................................................ 14

*Brown v. Google LLC*,
  685 F. Supp. 3d 909 (N.D. Cal. 2023) ................................................................................. 12

*Busby v. Invoca, Inc.*,
  2025 WL 822664 (N.D. Cal. Mar. 14, 2025) ......................................................................... 9

*Campbell v. Facebook Inc.*,
  77 F. Supp. 3d 836 (N.D. Cal. 2014) ................................................................................... 10

*Cody v. Ring LLC*,
  718 F. Supp. 3d 993 (N.D. Cal. 2024) ................................................................................... 6

*Council on American-Islamic Relations Action Network, Inc. v. Gaubatz*,
  31 F. Supp. 3d 237 (D.D.C. 2014) ......................................................................................... 9

*D'Angelo v. Penny OpCo, LLC d/b/a JCPenney*,
  2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ............................................................. 6, 7, 11

*Flanagan v. Flanagan*,
  27 Cal. 4th 766, 41 P. 3d 575 (2002) ................................................................................... 12

*Garcia v. Yeti Coolers, LLC*,
  2023 WL 5736006 (C.D. Cal. Sept. 5, 2023) ........................................................................ 3

*Gladstone v. Amazon Web Servs., Inc.*,
  739 F. Supp. 3d 846 (W.D. Wash. 2024) ...................................................................... passim

*Graham v. Noom, Inc.*,
  533 F. Supp. 3d 823 (N.D. Cal. 2021) ............................................................................... 6

*In re Carrier IQ, Inc.*,
  78 F. Supp. 3d 1051 (N.D. Cal. 2015) ............................................................................. 11

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ....................................................................................... 1, 11

*In re Meta Pixel Healthcare Litig.*,
  647 F. Supp. 3d 778 (N.D. Cal. 2022) ............................................................................. 13

*James v. Walt Disney Co.*,
  701 F. Supp. 3d 942 (N.D. Cal. 2023) ............................................................................... 9

*Javier v. Assurance IQ, LLC*,
  649 F. Supp. 3d 891 (N.D. Cal. 2023) ........................................................................ passim

*Javier v. Assurance IQ, LLC*,
  2022 WL 1744107 (9th Cir. May 31, 2022) .................................................................... 13

*Lieberman v. KCOP Television, Inc.*,
  110 Cal. App. 4th 156, 1 Cal. Rptr. 3d 536 (2003) ......................................................... 12

*Marden v. LMND Med. Group, Inc.*,
  2024 WL 4448684 (N.D. Cal. July 3, 2024) ..................................................................... 6

*Matera v. Google Inc.*,
  2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) .................................................................. 8

*McClung v. AddShopper, Inc.*,
  2024 WL 189006 (N.D. Cal. Jan. 17, 2024) .................................................................... 10

*Noel v. Hall*,
  568 F.3d 743 (9th Cir. 2009) ............................................................................................. 2

*Revitch v. New Moosejaw, LLC*,
  2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ................................................................... 3

*Ribas v. Clark*,
  38 Cal. 3d 355 (1985) ................................................................................................ passim

*Roney v. Miller*,
  705 F. App'x 670 (9th Cir. 2017) .................................................................................... 14

*Saleh v. Nike, Inc.*,
  562 F. Supp. 3d 503 (C.D. Cal. 2021) ....................................................................... 2, 3, 8

*Shah v. Fandom, Inc.*,
  754 F. Supp. 3d 924 (N.D. Cal. 2024) ........................................................................... 7, 8

*Smith v. YETI Coolers, LLC*,
   754 F. Supp. 3d 933 (N.D. Cal. 2024) .................................................................................. 6, 12

*Strehl v. Guitar Center, Inc.*,
   2024 WL 2790373 (C.D. Cal. May 29, 2024) ............................................................................ 9

*Swarts v. Home Depot, Inc.*,
   689 F. Supp. 3d 732 (N.D. Cal 2023) ....................................................................................... 13

*Tate v. VITAS Healthcare Corp.*,
   2025 WL 50447 (E.D. Cal. Jan. 8, 2025) ............................................................................ passim

*Turner v. Nuance Commc'ns, Inc.*,
   735 F. Supp. 3d 1169 (N.D. Cal. 2024) ............................................................................... 3, 4, 6

*Valenzuela v. Nationwide Mut. Ins. Co.*,
   686 F. Supp. 3d 969 (C.D. Cal. 2023) ................................................................................ passim

*Valenzuela v. Super Bright LEDs Inc.*,
   2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) ................................................................... 3, 6, 7

*Wright v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
   2023 WL 5837492 (S.D. Cal. Sept. 8, 2023) ............................................................................. 5

*Yockey v. Salesforce, Inc.*,
   688 F. Supp. 3d 962 (N.D. Cal. 2023) ............................................................................... 3, 6, 11

*Yockey v. Salesforce, Inc.*,
   745 F. Supp. 3d 945 (N.D. Cal. 2024) ............................................................................. 5, 11, 13

*Yoon v. Lululemon USA, Inc.*,
   549 F. Supp. 3d 1073 (C.D. Cal. 2021) ............................................................................. 2, 4, 5

**RULES**

Fed. R. Civ. P. 15(a) ......................................................................................................................... 14

Plaintiff respectfully submits this opposition to Defendant ConverseNow Technologies Inc.'s ("ConverseNow" or "Defendant") Motion to Dismiss Plaintiff's Complaint (ECF No. 21) ("MTD").

## INTRODUCTION

As the Ninth Circuit has held, the purpose of wiretapping laws, like the California Invasion of Privacy Act ("CIPA"), is to "prevent the acquisition of the contents of a message by an unauthorized third party or an unseen auditor." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020) (cleaned up). Or, as the California Supreme Court put it:

> While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and *its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device.*
>
> As one commentator has noted, such secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements.

*Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985) (emphasis added; internal citations omitted). Thus, when a consumer communicates with a business's customer service representatives, they expect to only communicate with the company through its employees. Consumers do not expect their communications with these companies to be secretly listened to, rerouted to, and accessed by a completely separate third party—the "unseen auditor." This is especially true in conversations where a party shares credit card information and other personal information, which necessarily entails a higher degree of confidentiality.

But that is what happened here. As Plaintiff's Complaint (ECF No. 1) ("Compl.") alleges, Plaintiff called the number for Domino's Pizza ("Domino's") to place an order for pizza. Compl. ¶ 6. In doing so, Plaintiff reasonably expected that the only other party to the phone call would be Domino's. This was largely in part because Plaintiff provided personal information, such as her home address, name, and credit card information, and was never informed ConverseNow or any other entity besides Domino's was a party to the call. *Id.* ¶ 7. However, unbeknownst to Plaintiff,

the contents of her communications were recorded and analyzed by an unknown third party: ConverseNow. ConverseNow had no right to access Plaintiff's communications with Domino's.

ConverseNow's software-as-a-service ("SaaS") is utilized by restaurants throughout California. In utilizing Defendant's SaaS, these restaurants ("Nonparty Entities") enable ConverseNow to wiretap the contents of callers, like Plaintiff and Class members, by intercepting the communications and redirecting them to ConverseNow's servers. Compl. ¶ 35; *see also Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009) (holding interception occurs "when the contents of a wire communication are captured or redirected in any way"). ConverseNow does not simply provide a tool like a tape recorder with which the Nonparty Entities recorded their own conversations. Instead, ConverseNow "is a separate legal entity that offers 'software-as-a-service' and not merely a passive device." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021).

Defendant offers a host of arguments to support dismissal of Plaintiff's claims. However, as shown below, all of Defendant's arguments have been widely rejected by courts in this District and elsewhere, and this Court should do the same.

## ARGUMENT

### I.  DEFENDANT VIOLATED CIPA § 631

#### A.  ConverseNow Is A Third-Party Wiretapper Of Plaintiff's Communications

Defendant argues Plaintiff cannot state a CIPA § 631(a) claim because "ConverseNow is not a 'third party' to the alleged communications at issue, but rather an extension of its customer Domino's." MTD at 13. As a preliminary matter, whether Defendant is a third-party wiretapper is a "a question of fact for a jury, best answered after discovery into the storage mechanics of [ConverseNow's SaaS]." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021); *see also Augustine v. Lenovo (United States), Inc.*, 2023 WL 4938050, at *3 (S.D. Cal. Aug. 2, 2023) (same). Regardless, and as explained in more detail below, courts are generally split into two camps regarding whether a software-as-a-service ("SaaS") provider, like Defendant, is a third-party wiretapper for the purposes of CIPA § 631. The better-reasoned approach—the "capability" approach—supports Plaintiff's allegations that Defendant is a third-party wiretapper and is thus

liable for violating CIPA § 631.[1]  Defendant's proffered interpretation—the "extension" approach—has no basis in the text, caselaw, and legislative policy behind CIPA § 631, and should be rejected. But even under this interpretation, Plaintiff has sufficiently alleged Defendant is a third-party wiretapper.

> 1. *Defendant Is A Third-Party Wiretapper Under The "Capability" Approach, Which The Court Should Adopt*

Plaintiff respectfully submits the Court should adopt the "capability" analysis and join the "growing number of district courts" to do so. *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1184 (N.D. Cal. 2024) (collecting cases adopting the "capability" approach and doing the same); *see also*, *e.g.*, *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 854 (W.D. Wash. 2024); *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 972-73 (N.D. Cal. 2023); *Balletto v. Am. Honda Motor Co.*, 2023 WL 7026931, at *2 (N.D. Cal. Oct. 24, 2023); *Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *7 (C.D. Cal. Nov. 27, 2023); *Garcia v. Yeti Coolers, LLC*, 2023 WL 5736006, at *3 (C.D. Cal. Sept. 5, 2023); *Tate v. VITAS Healthcare Corp.*, --- F.Supp.3d ----, 2025 WL 50447, at *4 (E.D. Cal. Jan. 8, 2025);

First established in *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023), the "capability" approach holds a SaaS provider is a third-party wiretapper if the SaaS provider "ha[s] the *capability* to use its record of the interaction for any other purpose ([unlike] a tape recorder [that] has no independent capability to divulge the recording for any other purpose but that of its owner)." *Id.* at 900 (emphasis in original).  The "capability" approach does not require that the SaaS provider actually use the data for another purpose in the instant action, only that the SaaS provider can do so.

---

[1] Notably, a number of courts have even held a SaaS provider is a third-party wiretapper by virtue of the fact that it is "a separate legal entity that offers 'software-as-a-service' and not merely a passive device." *Saleh*, 562 F. Supp. 3d at 520 (finding SaaS provider was a third party to communications between website and its customers); *see also*, *e.g.*, *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 981 (C.D. Cal. 2023) ("[A] plausible inference from Valenzuela's allegations is that Akamai—a corporate entity wholly distinct from Nationwide—is a third party learning the contents of communications in real time."); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("[I]t cannot be that anyone who receives a direct signal escapes liability by becoming a party to the communication. Someone who presses up against a door to listen to a conversation is no less an eavesdropper just because the sound waves from the next room reach his ears directly. That person remains a third party, even as a direct recipient of the speaker's communication.").  Plaintiff believes this remains the best interpretation of CIPA § 631, and respectfully submits that the "capability" approach is well-grounded in the text, caselaw, and legislative history of the statute.

*Id.* (SaaS provider was a third party where "Active Prospect can use that information for other purposes, even if Javier has not alleged that they have done so in this case").

Applying the "capability" approach, Plaintiff's allegations suffice to show ConverseNow is a third-party eavesdropper. As Plaintiff alleges, ConverseNow has the capability to use the wiretapped conversations for a number of purposes other than providing them to Nonparty Entities, including but not limited to:

- Use such communications for its own purposes, as it explains, "by processing millions of live conversations each month, our self-learning system evolves even faster every day to improve the guest experience for new and existing partners alike." Compl. ¶ 24.

- ConverseNow's Voice AI "uses natural language processing (NLP), natural language understanding (NLU), and machine learning algorithms to interpret and respond to speech, and to learn from these user interactions" creating "a feedback loop where the voice AI platform continuously refines the underlying algorithms." *Id.* ¶ 25.

- Use "virtual assistants [that] are dynamic conversationalists that recognize context clues, read between the lines and refine their algorithms with each order." *Id.* ¶ 26.

- Continue sales (and profitability) based on ConverseNow's ability to improve its software capabilities and reduce the need to employ its off-site agents to monitor and correct orders. *Id.* ¶ 27; *see also id.* ¶ 44 (ConverseNow's Privacy Policy explicitly states that it uses information from callers to "improv[e] our ordering platform, advertisements, products, and services.").

These allegations make clear that ConverseNow has the capability to "capture[], store[], and interpret[] [] real-time data—which extends beyond the ordinary function of a tape recorder." *Yoon*, 549 F. Supp. 3d at 1081; *see also Gladstone*, 739 F. Supp. 3d at 854 (SaaS provider was a third party wiretapper where it "may use and store Amazon Connect ML Content to develop and improve Defendant's own services" and "has the capability to analyze any data it collects through its Amazon Connect platform") (cleaned up); *Turner*, 735 F. Supp. 3d at 1185 (same where "the court may reasonably infer that at the very least, Nuance can use consumers' voice prints to improve its own products and services"); *VITAS Healthcare Corp.*, 2025 WL 50447, at *6 ("Invoca's software, while not a physical device, has the capability to *record* confidential information made in calls and

reproduce those calls and data extracted from them for VITAS or Invoca."); *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 951-52 (N.D. Cal. 2024) (same where "Salesforce has the capability to use Chat communications to (i) improve Salesforce's own products and services; (ii) develop new Salesforce products and services; and (iii) analyze Chat communications to assist with customer service interactions and data analytics") (cleaned up); *Balletto v. Am. Honda Motor Co.*, 2024 WL 589090, at *3 (N.D. Cal. Feb. 13, 2024) ("Balletto does include allegations about how Salesforce would be capable of using data from Honda's website: through the Einstein data intelligence platform."); *Javier*, 649 F. Supp. 3d at 900 (SaaS provider was a third party where "Javier pleads that ActiveProspect monitors, analyzes, and stores information about visits to Assurance's websites"); *Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969 (finding that "software that allows a third party to capture messages in real time and later perform data analysis" should qualify as a third-party wiretapper); *Wright v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 2023 WL 5837492, at *6 (S.D. Cal. Sept. 8, 2023) (SaaS provider is a third party eavesdropper based on "allegations that Quantum retains the right to analyze and distribute recorded communications for independent purposes").

As it stands, Defendant's capability to use the intercepted communications for its own purposes, as well as its ability to "capture[], store[], and interpret[] [] real-time data—which extends beyond the ordinary function of a tape recorder" (*Yoon*, 549 F. Supp. 3d at 1081)—makes it a third-party eavesdropper. *See Gladstone*, 739 F. Supp. 3d at 854 ("[T]he Court can infer that Defendant can use the data is collects to improve its own products and services, which shows that it is capable of creating, recoding, and retaining data for purposes other than sending the data back to Capital One.") (cleaned up); *VITAS Healthcare Corp.*, 2025 WL 50447, at *1 ("Via its Terms of Service, the software creator reserved the rights to employ the data yielded from those calls for its own business and product development functions.").

### 2. Defendant Is Also A Third-Party Wiretapper Under The "Extension" Approach, Which The Court Should Reject

Defendant argues it is not liable under the "extension" approach because Section 631 claims cannot be brought against software vendors that "recorded clients' customers' phone calls or other communications in order to help the vendors' clients serve those customers." MTD at 13. As an

initial matter, based on the same allegations above, Defendant uses the data it receives through its SaaS to refine its algorithms with every call, thereby improving its own systems, which allows Defendant to market and sell its services to other potential clients. Compl. ¶¶ 24-27, 44. These allegations satisfy the "extension" approach because Defendant "intercepted and used the data itself" "to monetize and market [its] own services" (*i.e.*, by improving its servings and making them more profitable). *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021); *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 940 (N.D. Cal. 2024) (internal quotations omitted). Therefore, using the intercepted communications to improve Defendant's own products and services cannot be for the Nonparty Entities' "sole benefit." *Marden v. LMND Med. Group, Inc.*, 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024) (Lin, J.) ("Plaintiffs allege that Google and Facebook benefited from this interception by using the information to sell ads to other third-party advertisers.").

Defendant relies on *Graham*, 533 F. Supp. 3d at 832, along with other decisions that follow *Graham*'s reasoning, and asks this Court to read into CIPA § 631 an intent requirement. MTD at 19. However, a growing number of courts have rejected this approach, holding that "*Graham* and its progeny are based on a misinterpretation of Section 631 and *Ribas*, both of which compel the conclusion that the third party's intentions with respect to the use of the collected information are irrelevant." *Yockey*, 688 F. Supp. 3d at 972; *see also*, *e.g.*, *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1002 (N.D. Cal. 2024) ("the Court rejects that interpretation of Section 631 because it adds requirements about the 'intentions and usage of the prospective third party' that are not present in Section 631's second clause, and it would make the third clause (penalizing 'use') superfluous."); *VITAS Healthcare Corp.*, 2025 WL 50447, at *4 (disagreeing with Graham, holding "Section 631(a)'s text, which prohibits a third party from 'learn[ing] the contents or meaning of any message,' does not actually contain a use requirement.") (citing cases); *Javier*, 649 F. Supp. 3d at 900 (rejecting "extension" approach); *Gladstone*, 739 F. Supp. 3d at 854 (same); *Turner*, 735 F. Supp. 3d at 1184 (same); *Balletto*, 2023 WL 7026931, at *2 (same); *Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969 (same); *Super Bright LEDs Inc.*, 2023 WL 8424472, at *7 (same); *D'Angelo v. Penny OpCo, LLC d/b/a JCPenney*, 2023 WL 7006793, at *7-8 (S.D. Cal. Oct. 24, 2023) (same). This Court should do the same.

*First*, the "extension" approach defies the text of CIPA § 631, which controls as to statutory interpretation. *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 929 (N.D. Cal. 2024) ("[T]he Court's analysis must begin with the statutory text, and if that text is clear, must end there."). Specifically, the "extension" approach "interprets the second prong of the statute"—which penalizes "reading" communications—"based on the intentions and usage of the prospective third party." *Javier*, 649 F. Supp. 3d at 900. And "the third prong of the statute already penalizes 'use.'" *Id*. "Thus, reading a use requirement into the second prong would add requirements that are not present (and swallow the third prong in the process)." *Id*.; *see also D'Angelo*, 2023 WL 7006793, at *7-8 ("A use requirement is more appropriate in a Clause Three, not Clause Two … To plausibly allege a violation of Clause Two, [plaintiffs] need not allege that Vergic [conducted wiretapping] for its own use."); *Super Bright LEDs Inc.*, 2023 WL 8424472, at *7 ("The determination … that a violation of the second clause could occur only when the information in the communication was actually used by the vendor, are not based on the actual language of the statute."); *VITAS Healthcare Corp.*, 2025 WL 50447, at *4 ("In other words, an entity can violate the statute by learning the contents of the message *or* by using information obtained from listening in on a conversation.").

Further, CIPA § 631(a) penalizes those who "aid[], agree[] with, employ[], or conspire[] with any person" to conduct wiretapping. In other words, CIPA § 631 not only prohibits wiretapping by a third party like ConverseNow, but also prohibits a party to the communication, such as the Nonparty Entities, from allowing Defendant to wiretap *on the Nonparty Entities' behalf*. The "extension" approach is thus contrary to this plain text as well, as it would exempt an employer who asks his or her employee to conduct wiretapping. And because it is contrary to the text of CIPA § 631, the "extension" approach is incorrect.

*Second*, in *Ribas*, the California Supreme Court "did not consider the wife's friend's intentions or the use to which they put the information they obtained." *Javier*, 649 F. Supp. 3d at 900. "Instead, [*Ribas*] emphasized the privacy concerns at issue with having an unannounced second auditor listening in on the call." *Id.* (cleaned up). The "extension" approach, however, would have exempted the friend and the hypothetical secretary, as they were simply wiretapping on behalf of the wife and their employer respectively. But that is not what the California Supreme Court held.

Moreover, the California Supreme Court expressly held CIPA § 631 was enacted to prevent eavesdropping by "an unannounced second auditor, whether that auditor be a person *or mechanical device*." *Ribas*, 38 Cal. 3d at 360-61 (emphasis added).  Under the "extension" approach, the "mechanical device" auditor would not be an eavesdropper, which also goes against *Ribas*.

*Third*, as the *Saleh* court recognized:

> [The "extension" approach w]ould imply that any third party who surreptitiously recorded a conversation between two parties would not violate § 631(a) so long as it was recording the conversation at the direction and for the benefit of a party.  The text of section 631(a), however, does not contain any such exception, and indeed, [Defendant] invite[s] an interpretation that would vitiate the statute's protections.

*Saleh*, 562 F. Supp. 3d at 520; *Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d at 980 ("Eavesdropping on a conversation at the time it occurs is a violation of Section 631, even if done for the benefit of a party to the conversation.").  In other words, adopting the "extension" approach would undermine CIPA's purpose of preventing the dissemination communications to an unannounced second auditor, *see Ribas*, 38 Cal. 3d at 360-61, as it would allow any third party to escape liability so long as it was acting on behalf of a party.  On top of this, the "extension" approach permits innumerable technology companies to possess the communications of Californians simply because they were paid by others to do so, thus costing Californians "the right to control the nature and extent of the firsthand dissemination of [their] statements." *Ribas*, 38 Cal. 3d at 361.  This undercuts the purpose of CIPA, which is to be "interpret[ed] … in the manner that fulfills the legislative purpose of CIPA by giving greater protection to privacy interests." *Shah*, 754 F. Supp. 3d at 930.  Given this, the Court must adopt the "capability" approach over the "extension" approach because "when faced with two possible interpretations of CIPA, the California Supreme Court has construed CIPA in accordance with the interpretation that provides the greatest privacy protection." *Matera v. Google Inc.*, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016).

Finally, even if intent was a required element (which it is not), Plaintiff sufficiently alleges that ConverseNow intentionally wiretapped her and Class members' communications with the Nonparty Entities.  Specifically, Plaintiff alleges ConverseNow contracts with Nonparty Entities like Domino's to utilize ConverseNow's Saas.  Compl. ¶¶ 71, 45.  These contracts also contain Terms

and Conditions with the Nonparty Entities which govern the data ConverseNow intentionally collects and uses from Nonparty Entities' costumers. *Id.* ¶ 42. Moreover, Defendant's SaaS was intentionally designed to record and analyze confidential phone calls. *Id.* ¶ 40. In addition, Defendant's own website discusses Domino's use of its SaaS. *Id.* ¶¶ 32-34. These allegations are sufficient to show ConverseNow intended to wiretap Plaintiff's and Class members' conversations with Nonparty Entities. *See, e.g.*, *Busby v. Invoca, Inc.*, 2025 WL 822664, at *1 (N.D. Cal. Mar. 14, 2025) (denying that the third party was merely an extension because "the FAC says that Invoca is a separate legal entity from DISH and DirecTV, and that DISH and DirecTV are Invoca's customers. The FAC also alleges that Invoca recorded conversations between plaintiffs and DISH and DirecTV in which Invoca was not a party. In addition, the FAC alleges that Invoca expressly claims the right to independently use data from the calls it recorded to 'market' and 'enhance' its own services."); *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 954 (N.D. Cal. 2023) (requisite intent alleged where "it can reasonably be inferred that Disney entered into a contractual arrangement with Oracle under which Oracle would collect information from EPSN.com website users so that Disney could market to and attract new customers"); *Gladstone*, 739 F. Supp. 3d at 860 (intent alleged where "[t]he SAC alleges that Amazon Connect is designed for the purpose of recording and analyzing communications between its customers (like Capital One) and consumers or other entities" and "Defendant features Capital One as a 'case study' on its website, demonstrating specific awareness of the nature of Capital One's business"); *Strehl v. Guitar Center, Inc.*, 2024 WL 2790373, at *7 (C.D. Cal. May 29, 2024) (intent alleged for Pennsylvania wiretapping statute where "the Complaint [] alleges that Defendant pays Salesforce to conduct the activity of capturing the electronic communications of visitors to the Website") (cleaned up); *Council on American-Islamic Relations Action Network, Inc. v. Gaubatz*, 31 F. Supp. 3d 237, 265 (D.D.C. 2014) (intent alleged for D.C. wiretapping statute because, "by hiring Gaubatz to make recordings of Plaintiffs, CSP actively brought about, caused, or instigated the recordings of Plaintiffs' offices").

### B. Defendant Intercepted The Contents Of Plaintiff's Communications With The Nonparty Entities In Real Time

Defendant argues Plaintiff's "conclusory allegations are insufficient to support the element of 'interception,' and [Plaintiff] instead must plead specific facts explaining how the software works or how the interception actually occurs." MTD at 16. As a preliminary matter, Plaintiff's allegations that the transmissions were intercepted in real time must be assumed as true at this stage. *See*, *e.g.*, *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) ("[T]he complaint's allegation that users' messages were intercepted in transit is to be taken as true at this stage of the case."). In any event, Defendant's argument seemingly ignores Plaintiff's detailed allegations regarding the interception.

Plaintiff alleges that, according to Defendant's own documents, ConverseNow's "voice AI assistants automatically answer every call that comes in and accurately records guest orders in real-time." Compl. ¶ 29 (emphasis added). Notably, the caller is dialing the phone number for the Nonparty Entity, which in Plaintiff's case is Domino's. *Id*. ¶ 6. Next, "guests enjoy a natural conversation with a virtual assistant as they would a typical team member." *Id*. ¶ 20. Then, "the order is sent into the cloud for [Nonparty Entities'] POS to process automatically." *Id*. (cleaned up). Notably, ConverseNow's "technology keeps a person behind the scenes in every conversation." *Id*. ¶ 23. What is more, Defendant's own website further states "voice AI assistants aren't merely executing simple, scripted actions. Virtual assistants are dynamic conversationalists that recognize context clues, read between the lines and refine their algorithm with each order." *Id*. ¶ 26. Thus, Defendant is intercepting and collecting the content of any conversation before said data is provided to the businesses that are the actual intended parties to the conversations. *Id*. ¶ 62. As Defendant's website explains, "guests enjoy a natural conversation with a virtual assistant" and "once [the conversation] is complete, the order is sent into the cloud[.]" *Id*.

These allegations are not conclusory and support a finding at this stage that Defendant intercepted Plaintiff's and Class members' communications in real time. None of these features could occur unless Defendant was contemporaneously intercepting the contents of Plaintiff's communications. *See, e.g.*, *McClung v. AddShopper, Inc.*, 2024 WL 189006, at *3 (N.D. Cal. Jan.

17, 2024) ("The complaint does more than merely recite the statutory element: it makes specific factual allegations describing how AddShoppers's cookies intercept the information in real time, and it points to statements allegedly made by AddShoppers about real time transmission."); *In re Facebook*, 956 F.3d at 608 n.9; *see also Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d at 979 ("[Plaintiffs] did not simply recite that there was real time interception, she added detail on how it occurs … and pointed to statements from Defendant regarding real-time insights and data from every use event collected as it happens.") (cleaned up); *Yockey*, 688 F. Supp. 3d at 976 ("Yockey plausibly alleges that Salesforce, in real time, directly receives Chat communications, creates live transcripts of those communications, and permits Rite Aid supervisors to view those transcripts.") (internal citations omitted); *D'Angelo*, 2023 WL 7006793, at *8 (in-transit interception alleged where the alleged third-party wiretapper "receives the chat messages either before or simultaneously with" the website); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1078 (N.D. Cal. 2015); ("[T]he Carrier IQ Software at issue in this case is alleged to operate on sent and received communications during the transmission process.").

Defendant's argument that "the alleged customers do not even reach Domino's when calling but instead communicate directly with ConverseNow's servers" is of no import. MTD at 17. The California Supreme Court held in *Ribas* that CIPA § 631(a) protects Californians against the "simultaneous dissemination" of their communications. *Ribas*, 38 Cal. 3d at 360. The Ninth Circuit echoed this in *In re Facebook*, 956 F.3d at 608, holding that "[p]ermitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion." *See also D'Angelo*, 2023 WL 7006793, at *8 (in-transit interception alleged where the alleged third-party wiretapper "receives the chat messages <u>either before or simultaneously with</u>" the website) (emphasis added); *Yockey*, 745 F. Supp. 3d at 953 ("[B]ecause Salesforce 'apparently receives the chat messages either before or simultaneously with' its clients—the intended recipients, [the reasonable inference] is that Salesforce intercepts these messages.") (quoting *D'Angelo*, 2023 WL 7006793, at *8). Plaintiff alleges such conduct by ConverseNow.

## II. DEFENDANT VIOLATED CIPA § 632

Defendant contends that Plaintiff fails to allege a claim under CIPA § 632 because it "applies to objectively confidential communications, not a customer's phone call focused on ordering pizza and choosing pizza crust and toppings." MTD at 22. However, Defendant fails to acknowledge that along with her pizza order, Plaintiff provided her name, address, and credit card information on the phone call. Compl. ¶ 7.

A communication is confidential under § 632 if a party "has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 41 P. 3d 575, 576 (2002) (endorsing this standard). This is a "fact-intensive inquiry" that is often too difficult to resolve at the pleadings stage. *Brown v. Google LLC*, 685 F. Supp. 3d 909, 937 (N.D. Cal. 2023); *see also Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 1 Cal. Rptr. 3d 536, 545 (2003) ("It is for the jury to decide whether under the circumstances presented [Plaintiff] could have *reasonably* expected that the communications were private."). Here, Plaintiff alleges that she had an objectively reasonable expectation of privacy and "did not reasonably expect that anyone other than [Domino's] would be on the other end of the confidential communications[.]" Compl. ¶ 77. This was due to the fact Plaintiff disclosed her "name, address, and credit card information." *Id.* ¶ 78. In fact, ConverseNow's Privacy Policy confirms it collects this confidential information, including "payment instrument number (such as credit card number), the security code associated with their payment instruction." *Id.* ¶ 79. The sensitive nature of this information enhances Plaintiff's reasonable expectation of privacy because such information should not be disclosed to, nor intercepted by, third parties like ConverseNow. *Id*. *See Smith*, 754 F. Supp. 3d at 943 ("Plaintiff has plausibly alleged that the sensitive financial information being recorded is the type that could be reasonably considered confidential."); *Bales v. Sierra Trading Post, Inc.*, 2013 WL 6244529, at *3 (S.D. Cal. Dec. 3, 2013) ("[T]he complaint adequately states that Plaintiff had a reasonable basis to believe that his personal financial information, including his credit card number, would not be recorded absent the required notice."). Defendant's relied upon authority is inapposite, as those cases involved transmissions on the internet and "courts have developed a presumption that Internet communications do not reasonably give rise to an expectation of confidentiality, and plaintiffs must

'show[ ] that there is something unique about these particular internet communications which justify departing from the presumption.'" *Yockey*, 745 F. Supp. 3d at 955 (citing *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022). The same cannot be said for conversations held over the phone, which was exactly what CIPA first intended to protect.

Moreover, Defendant's reliance on *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732 (N.D. Cal 2023) to argue Plaintiff's claim that she was unaware her phone calls with an automated voice were recorded is objectively unreasonable is similarly misplaced. MTD at 21. Defendant is essentially asserting that if Plaintiff knew the call was recorded based on the use of an automated voice (which she did not), then that excuses Defendant from § 632 liability. However, in *Javier*, 649 F. Supp. 3d at 896, the defendants made similar arguments, claiming that if the plaintiff "impliedly consented" to letting the party collect information, it also serves as implied consent for the SaaS provider. The court disagreed, holding that "while [plaintiff] may have impliedly consented to [the party's] collection of his information, he did not impliedly consent to [the third party] doing so." *Id*. at 896-97. Thus, even if Plaintiff believed the call was being recorded by Domino's, she did not believe, nor provided the required consent, that ConverseNow may record the phone call.

Further, there is no reason to think the California Supreme Court would interpret CIPA § 631 and 632 different on this issue. The "California Supreme Court has emphasized that all CIPA provisions are to be interpreted in light of the broad privacy-protecting statutory purposes of CIPA." *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) (quoting *Ribas*, 38 Cal. 3d at 359). As the court in Ribas explained, a factor in reading and interpreting the Privacy Act is the principle that "secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements." *Ribas*, 38 Cal. 3d at 361. "Partly because of this factor, the Privacy Act has been read to require assent of all parties to communication before another may listen." *Id*. Accordingly, it would be absurd to suggest that a third party could escape liability for recording confidential communications so long as the Plaintiff believed the intended party to the communication was recording the communication, without disclosing the existence of the third party.

**III.     DISMISSAL WITHOUT LEAVE TO AMEND IS IMPROPER**

Defendant argues that the Court should dismiss Plaintiff's Complaint with prejudice because any amendment to the Complaint would be futile. Defendant's request is improper.

Rule 15(a) provides that a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Moreover, "Rule 15(a) is very liberal and leave to amend shall be freely given when justice so requires." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citation and quotation omitted). While it is true that "leave to amend need not be granted where amendment is 'futile,'" that is not the case here. *Berexa v. Target Corp.*, 2024 WL 4374140, at *4 (E.D. Cal. Oct. 2, 2024). Amendment is only futile "when no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim." *Id*.

Plaintiff respectfully submits that her allegations are sufficient to state a claim. However, should the Court find to the contrary, Plaintiff can provide additional allegations regarding Defendant's SaaS, Defendant's intent, and Plaintiff's expectations of privacy regarding her communications. Thus, there is no basis to dismiss Plaintiff's complaint with prejudice.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion in its entirety. If the Court determines that the pleadings are deficient in any respect, Plaintiff respectfully requests leave to amend to cure any such deficiencies. *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017).

Dated: April 23, 2025                                    Respectfully submitted,

**BURSOR & FISHER, P.A**.

By:     /s/ L. Timothy Fisher
          L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com

*Attorneys for Plaintiff*