STEPHEN S. WU, SBN 205091
ssw@svlg.com
MARC G. VAN NIEKERK, SBN 201329
mvn@svlg.com
**SILICON VALLEY LAW GROUP**
1 North Market Street, Suite 200
San Jose, CA 95113
Telephone: (408) 573-5700
Facsimile: (408) 573-5701

HILLARD M. STERLING (Admitted *Pro Hac Vice*)
hsterling@ralaw.com
KARMAN S. BAINS (Admitted *Pro Hac Vice*)
kbains@ralaw.com
**ROETZEL & ANDRESS, LPA**
10 N. Madison St., Suite 3000
Chicago, IL 60602
Telephone: (312) 962-8082
Facsimile: (312) 580-1201

Attorneys for Defendant
CONVERSENOW TECHNOLOGIES, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ELIZA TAYLOR, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CONVERSENOW TECHNOLOGIES, INC.,<br><br>Defendant. | Case No.: 3:25-cv-00990-SI<br><br>**DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Date: May 30, 2025<br>Time: 10:00 a.m. (via Zoom)<br>Ctrm.: 1, 17th Floor<br>Judge: Hon. Susan Illston<br><br>Class Action Complaint Filed:<br>January 30, 2025 |

**INTRODUCTION**

Plaintiff's Opposition Brief ("Opp.") (Dkt. 28) fails to explain away the multiple independent and dispositive deficiencies requiring dismissal of Plaintiff's Class Action Complaint ("Complaint" or "Compl.") As an initial matter, Plaintiff cannot avoid the wealth of governing case law holding that third-party software vendors (like ConverseNow) are not independent "third parties" secretly "eavesdropping" on private communications between their clients (like Domino's) and those clients' customers (like Plaintiff). Instead, ConverseNow functions as an extension of its own client, such that ConverseNow's software is more akin to a tape recorder than a third-party eavesdropper secretly listening to communications by an unwitting victim.

Plaintiff tries to avoid that jurisprudence by mischaracterizing the law as supposedly focused and fixated on whether ConverseNow's voice AI software is "capable" of performing functions that somehow are nefarious. Plaintiff's arguments are groundless under the law, which considers "capabilities" as relevant, not dispositive, to the "tape recorder/eavesdropper" analysis baked into governing jurisprudence. In addition, Plaintiff's allegations fail even when held to the light of the "capability" standard, and Plaintiff's own citations establish that ConverseNow's voice AI software's capabilities are focused on its clients and entirely permissible under the law. Plaintiff's Section 631 claim fails on that ground alone.

Plaintiff's 631 claim fails for additional independent reasons. Plaintiff does not (and cannot) allege that there was any actionable "interception" of Plaintiff's communications. To the contrary, Plaintiff alleges that her calls went directly to ConverseNow, not Domino's, and it is black-letter law that parties cannot "eavesdrop" on their own communications.

Furthermore, Plaintiff fails entirely to allege the requisite "intent" under this criminal statute, which requires specific allegations that ConverseNow consciously and deliberately intended to intercept wire communications. There are no such allegations because they would be palpably false. Read in its best light (and putting aside the multiple deficiencies), Plaintiff's Complaint is based on a gross extension of CIPA to normal and everyday interactions between people and technology, and there is no basis whatsoever to allege that ConverseNow intended to

1  do anything other than serve its client Domino's and improve the experience of Plaintiff and other
2  Domino's' customers.  There is no criminal intent here.  Nor does Plaintiff allege any.

3  Similarly, Plaintiff falls far short of alleging any "confidential" communications actionable
4  under CIPA Section 632.  Again, Plaintiff's experience reflects the everyday lives and transactions
5  in our economy – people communicating and interacting with voice AI technology.  Plaintiff is
6  trying to concoct a lawsuit under a decades-old statute that had (and has) nothing to do with
7  communications that have become a ubiquitous feature of our economy.  The Court should decline
8  Plaintiff's invitation to open the floodgates of litigation by expanding CIPA to these everyday
9  transactions on which companies like Domino's, and consumers like Plaintiff, rely.  Even
10 according to Plaintiff's own description of ConverseNow's technology, no eavesdropping
11 occurred; no interceptions occurred; and no breach of confidentiality occurred.  Plaintiff's case is
12 an opportunistic ploy to find liability with no victims or improprieties, and the Court should send
13 a loud-and-clear message against the filing of these meritless lawsuits.

## ARGUMENT

### I. PLAINTIFF FAILS TO ADDRESS THE MULTIPLE INDEPENDENT DISPOSITIVE DEFICIENCIES IN ITS CIPA SECTION 631 CLAIM.

#### A. Plaintiff's Reliance on the "Capability" Approach Misstates the Law and Ignores Governing Cases Permitting Recordings by Software Vendors.

"Only a third party can listen to a conversation secretly."  *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021).  Section 631(a) does not prohibit or restrict an alleged "interception" by a party to the communications, which "cannot be held to wiretap another party to the same communication."  *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 516 (C.D. Cal. 2021) (citing *Davis v. Facebook, Inc.* (*In re Facebook Inc. Internet Tracking Litig.*), 956 F.3d 589, 607 (9th Cir. 2020)); *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) (Section 631 "has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation").

Plaintiff tries but fails to avoid those governing cases by requesting the Court to adopt the "capability approach" which, according to Plaintiff, holds a Software as a Service ("SaaS") vendor (like ConverseNow) potentially liable if it 'ha[s] the *capability* to use its record of the interaction

for any other purpose" other than that of its owner.  (*See* Opp., Dkt. 28, at 3-4) (citing an excerpt from *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023).)  Plaintiff, however, misstates *Javier* and its progeny.

This Court has recognized a "split" in the Ninth Circuit between what has been labeled as the "extension test" (in which plaintiffs must "allege that the software vendor actually used the data it obtained for its own, independent purpose") and the "capability test" (in which plaintiffs must allege that the "software vendor has the capability to use the data for its own purposes"). *Ambriz v. Google, LLC*, No. 23-cv-05437, 2025 U.S. Dist. LEXIS 29609, at * 8 (N.D. Cal. Feb. 10, 2025).  However, regardless of which approach is taken, the underlying inquiry remains the same – whether ConverseNow's technology "behaves more akin to a tape recorder" utilized by the party to the conversation, or as an "'eavesdropper standing outside the door[.]'"  *See Javier*, 649 F. Supp. 3d at 898 (citations omitted).  Specifically, the *Javier* court framed the analysis as to whether the third-party vendor's software was "more akin" to: (a) a "tape recorder" for which the vendor cannot be held liable, like the recording by a party in the case of *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975); or (b) "eavesdropping" by an "unannounced second auditor," like the "friend" who listened into a conversation between two former spouses in the case of *Ribas v. Clark*, 38 Cal. 3d 355, 361-62 (1985).  *Javier*, 649 F. Supp. 3d at 898 (citations omitted).

*Javier* discussed the software's "capability," but not as a determinative factor in the tape recorder/eavesdropper inquiry.  Rather, *Javier* rejected defendant's argument that the software "does not have the <u>capability</u> to use its record of the interaction for any other purpose (just as a tape recorder has no independent capability to divulge the recording for any other purpose but that of its owner)." *Id.* at 900 (emphasis in original).  *Javier* rejected that argument because plaintiff had pled that defendant "can use" the recorded information "for other purposes." *Id.*

That holding does not mean, or even suggest, that ConverseNow may be held liable simply because its software may be "capable" of functionality beyond recording calls.  To the contrary, the Court must analyze Plaintiff's allegations and determine whether ConverseNow's software is "more akin" to a tape recorder (as in *Rogers*) or a third-party unexpected eavesdropper (as in *Ribas*).  *See Tanner v. Acushnet Co.*, No. 8:23-cv-00346-HDV-ADSx, 2023 U.S. Dist. LEXIS

208894, at * 9 (C.D. Cal. Nov. 20, 2023) ("When a party to a conversation records it, that party is not eavesdropping, but rather is acting as a 'tape recorder'") (citation omitted).

Plaintiff's own allegations establish that ConverseNow is "more akin" to a recorder than an eavesdropper. Plaintiff alleges that ConverseNow's voice AI technology was "enabled by Domino's to process Plaintiff's order." (Compl. ¶ 8.) Plaintiff also alleges the sequence of calls processed by ConverseNow's voice AI technology: "When a customer calls a store utilizing Defendant's technology, like Domino's, a virtual assistant on behalf of ConverseNow intercepts the call and asks the caller how they can be of assistance. When a customer states they [sic] would like to place an order, the virtual assistant responds, 'let me transfer you to the order line.'" (*Id.* at ¶ 35.) Then, according to Plaintiff, "Defendant intercepts and redirects the call to its servers for recording." (*Id.*) "Upon stating their order, the virtual assistant [sic] then asks the customer if they would like anything extra, including deserts. Once the customer indicates that their order is complete, the voice confirms the order with them." (*Id.* ¶ 36.) "Next the virtual assistant asks the customer to provide their [sic] delivery address. After confirming the address, the voice prompts the customer for their [sic] credit card information." (*Id.* ¶ 37.) Furthermore, Plaintiff alleges that "when Defendant provided its service to businesses like Domino's, it was Defendants intention ***to record*** the communications of the restaurant's customers." (*Id.* ¶ 40) (emphasis supplied).

These allegations fall squarely within the scope of SaaS software held to be "more akin to" a tape recorder rather than an uninvited and unknown eavesdropper prying into conversations with unwitting participants. *See, e.g.*, *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1082-83 (C.D. Cal. 2023) (applying *Javier* and holding that "software like the alleged code employed by Defendant which intercepts in real time and stores transcripts is more akin to a tape recorder like the one used in *Rogers* than a friend against the door…."); *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1066-68 (C.D. Cal. 2023) (dismissing a Section 631 claim because "Defendant uses a third-party vendor to 'record and analyze its own data in aid of [Defendant's] business, not the 'aggregation of data for resale,' which made the third-party an 'extension' of Defendant's website, not a 'third-party eavesdropper'") (citations omitted); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832-33 (N.D. Cal. 2021) (holding that a software service provider was an "extension" of

its customer, since it "provides a tool . . . that allows [its client] to record and analyze its own data in aid of [its] business," hence the software vendor was "not a third-party eavesdropper").

Furthermore, the heightened privacy concerns discussed in *Javier* are not present in this case. *Javier* relied on *Revitch v. New Moosejaw*, No. 18-CV-06827-VC, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) and *Davis v. Facebook, Inc.* (*In re Facebook Inc. Internet Tracking Litig.*), 956 F.3d 589, 607 (9th Cir. 2020), in holding that the defendant software vendor was a "third-party eavesdropper" within the meaning of Section 631 and *Ribas v. Clark*, 38 Cal. 3d 355 (1985). 649 F. Supp. 3d at 898.  The *Revitch* court faced allegations that the vendor was a "marketing company and data broker" which embedded computer code onto participating websites to "*spy on the visitor* as he or she browses the website" and used the information to "de-anonymize website visitors." *Javier*, 649 F. Supp. at 899 (emphasis supplied).  Similarly, in *In re Facebook*, Facebook allegedly intercepted communications between a user's browser and a third-party website through its unknown plug-ins on third party sites. *Id.*  Here, by contrast, plaintiff (and other alleged callers) were knowingly interacting with technology and willingly communicating with a voice AI assistant to place and pay for their food orders.  There were no alleged hidden "embedded" computer codes or "plug-ins" siphoning off personal data.

The bottom line is that Plaintiff's allegations boil down to the proposition that Defendant somehow "intercepted" communications that Plaintiff obviously knew were occurring with software technology employed by Domino's because of the virtual, rather than human, assistants answering the calls. (*See* Compl. ¶¶ 35-37 (virtual assistants answer customer calls and interact with customers).)  Those allegations do not a CIPA claim make, and the Court should dismiss this novel attempt to extend CIPA to everyday interactions with voice AI technology that has become a ubiquitous part of our everyday interactions and lives.

Moreover, even if ConverseNow's software's "capabilities" were relevant (or, as Plaintiff erroneously argues, dispositive), Plaintiff does not allege facts plausibly showing that ConverseNow may (or can) use the alleged communications for purposes other than improving the software for its own clients and their customers.  Indeed, Plaintiff's allegations focus on those fully permissible (and necessary) purposes.  To wit, Plaintiff alleges that ConverseNow has the "ability

to improve its software capabilities and reduce the need to employ its off-site agents to monitor and correct orders." (*Id.* ¶ 27.) Ultimately, Plaintiff concludes that "ConverseNow has the capability to use caller communications to (i) improve its own products and services; (ii) develop new ConverseNow products and services; and (iii) analyze customers' communications to assist with avoiding the intervention of restaurant staff in the order process." (*Id.* ¶ 31.)

Governing law is clear that Plaintiff's allegations of ConverseNow's software's "capabilities" are patently insufficient to state a claim under CIPA Section 631. *See Jones v. Tonal Sys, Inc.*, 751 F. Supp. 3d 1025, 1036 (S.D. Cal. 2024) (holding that plaintiff's allegation that the vendor "'analyzes, stores, and uses for its own purposes' chat communications is conclusory and is not supported by the" complaint); *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1002-03 (N.D. Cal. 2024) (holding that plaintiff's "vague" and "generalized" allegations that a software vendor retained or harvested the "valuable data" and "profit[ed]" from exploiting the data failed to support an inference that the vendor was "capable of using the intercepted information for another purpose"). *See also Cody v. Boscov's*, 658 F. Supp. 3d 779, 782 (C.D. Cal. 2023) (dismissing plaintiff's Section 631 claim because "Plaintiff must provide facts suggesting that Webex and Kustomer are recording Defendant's customers' information for some use or potential future use beyond simply supplying this information back to Defendant," and "Plaintiff's sole relevant allegation that Webex and Customer use the code embedded in the chat program to 'harvest valuable data from such [customer] communications for the benefit of their clients like Defendant' is too vague and conclusory to meet this standard"); *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1066-68 (C.D. Cal. 2023) (holding that a vendor retained by defendant to "'record and analyze its own data in aid of [defendant's] business" was "an 'extension' of Defendant's website, not a 'third-party eavesdropper'") (citations omitted); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832-33 (N.D. Cal. 2021) (holding that a software service provider was an "extension" of its customer, since it "provides a tool . . . that allows [its client] to record and analyze its own data in aid of [its] business," hence the software vendor was "not a third-party eavesdropper").

Tellingly, Plaintiff's response relies on cases applying the "capability" element *to dismiss* claims like Plaintiff's here, in that the SaaS vendors' software (like ConverseNow's voice AI

software) was not alleged to be "capable" of anything beyond serving its clients (like Domino's) and their customers. *See Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 973 (N.D. Cal. 2023) (holding that plaintiff's "allegations do not support a reasonable inference that Salesforce has the capability to use these communications for any purpose other than furnishing them to" its customer); *Cody v. Boscov's*, 658 F. Supp. 3d 779, 782 (C.D. Cal. 2023) (holding that "Plaintiff must provide facts suggesting that Webex and Kustomer are recording Defendant's customers' information for some use or potential future use beyond simply supplying this information back to Defendant," and "Plaintiff's sole relevant allegation that Webex and Customer use the code embedded in the chat program to 'harvest valuable data from such [customer] communications for the benefit of their clients like Defendant' is too vague and conclusory to meet this standard").

Plaintiff's own cited authority, therefore, requires dismissal of Plaintiff's CIPA Section 631 claim, given the absence of cognizable allegations that ConverseNow's voice AI software was "capable" of anything beyond offering services to its client Domino's, even if the "capability" element were dispositive here, which it is not.

### B. Plaintiff Fails to Allege That ConverseNow "Intercepted" any "Communications" in Real Time, as Required by Governing Law.

Plaintiff does not – and cannot – avoid established jurisprudence requiring specific allegations that ConverseNow "intercepted communications in 'real time." *See Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024) (holding that plaintiff did not state a claim under Section 631(a) because his "conclusory allegations restating the pleading requirement of real-time interception fail to provide specific factual allegations"); *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2022 WL 214552, at *2 (N.D. Cal., Jan. 25, 2022) ("[u]sing the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting [plaintiff's] data in transit"). Instead, Plaintiff simply repeats and relies on her generic and conclusory allegations to that effect. (*See* Opp., Dkt. 28, at 10.)

Plaintiff's generic allegations do not grow more specific with repetition, and nowhere does Plaintiff allege specific facts showing how the software works or how the interception

actually occurs. That deficiency, in and of itself, requires dismissal, as held by numerous cases including multiple decisions by this Court. (*See* MTD, Dkt. 21, at 16-17.)

In addition, Plaintiff gives short shrift to the dispositive impact of Plaintiff's own allegation that there is no interception here because, according to Plaintiff, there is no two-party call between a customer and Domino's that ConverseNow then intercepts as a third party. To the contrary, Plaintiff alleges that when a customer calls the designated number, the customer reaches ConverseNow technology directly, which answers the call and creates a two-party call. The customers *do not even reach Domino's when calling*. (Compl. ¶¶ 35, 81.) Plaintiff tries to deflect attention from that defect by arguing that CIPA covers the "simultaneous dissemination" of communications (Opp., Dkt. 28, at 16), but that element has nothing to do with Plaintiff's burden of alleging (and ultimately proving) that ConverseNow "intercepted" communications between customers and Domino's. *See e.g.*, *Warden*, 99 Cal. App. 3d at 811 (applying Section 631(a) "only to eavesdropping by a third party and not to recording by a participant to a conversation"). ConverseNow cannot have "intercepted" a call that never reached Domino's, and the Court should dismiss Plaintiff's Complaint on that ground as well.

### C. Plaintiff Fails to Allege the Requisite "Intent" Under CIPA Section 631.

Plaintiff gives short shrift to her burden of alleging that ConverseNow "acted consciously and deliberately with the goal of intercepting wire communications," and not "as a result of accident or mistake." *United States v. Christensen*, 828 F.3d 763, 774 (9th Cir. 2015). *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1079 (C.D. Cal. 2023) (applying the intent element under CIPA and the federal Electronic Communications Privacy Act ("ECPA"), and holding that "[i]ntent under CIPA is determined consistently with intent under ECPA"). Plaintiff first denies that "intent was a required element" under Section 631(a), despite the first sentence of Section 631(a) which limits liability to those "intentionally" intercepting communications.

Tellingly, Plaintiff then cites allegations that fail to mention "intent," presumably inviting the Court to infer the presence of this central element despite the plain language of CIPA and governing jurisprudence. The Court should decline this invitation, and Plaintiff cites no cases

whatsoever permitting CIPA plaintiffs to omit specific intent allegations because intent somehow may be inferred from surrounding allegations. (*See* Opp., Dkt. 28, at 14.)

## II. PLAINTIFF COMES NOWHERE CLOSE TO PLEADING THE "CONFIDENTIALITY" ELEMENT UNDER CIPA SECTION 632.

Plaintiff concludes her brief with a cursory and unavailing discussion of her failure to plead a "confidential communication" under CIPA Section 632. As an initial matter, Plaintiff simply is wrong in mischaracterizing her burden as a "'fact intensive inquiry' that is often too difficult to resolve at the pleadings stage." (Opp., Dkt. 28, at 21.) This Court and other courts have had no difficulty dismissing complaints because of the absence of allegations sufficiently and plausibly alleging "confidentiality" under Section 632. (*See* MTD, Dkt. 21, at 20-22 (citing cases dismissing complaints on that ground).) And the "fact-intensive inquiry" language comes from *Brown v. Google LLC*, 685 F. Supp. 3d 909, 937 (N.D. Cal. 2023), which denied summary judgment for defendant and had nothing to do with a dismissal motion.

Plaintiff also makes no attempt to distinguish the facts of *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732 (N.D. Cal. 2023), which dismissed a Section 632 claim alleging the confidentiality of consumers' communications with customer service agents. As *Swarts* held, "Swarts's claim that consumers 'cannot be expected to know' that chat conversations with customer service agents are generally recorded is objectively unreasonable." *Id.* at 747. That same reasoning applies squarely here, in that Plaintiff's allegation that Domino's' customers were unaware that their phone calls, and their interactions with "an automated voice," (Compl. ¶ 5), were being recorded "is objectively unreasonable." *Swarts*, 689 F. Supp. 3d at 747 (recognizing that a relationship involving "[c]ommunications made in the context of a patient-medical provider relationship" is a "'readily distinguishable' relationship from that of a Home Depot customer conversing with a customer service agent") (citation omitted).

Rather than distinguish the facts of *Swarts*, Plaintiff turns to flawed policy arguments, concocting purported risks of allowing third parties to "escape liability" for customer-service phone calls. (Opp., Dkt. 28, at 13.) There are no such risks, and Plaintiff fails to identify any in the Complaint. The contrary, however, is true. There are material and intolerable risks of

permitting Plaintiff to allege the "confidentiality" of customer-service calls that clearly are not confidential at all. After all, there are no confidentiality concerns of a customer who interacts with voice AI technology to order a pepperoni pizza with breadsticks. Holding such communications to be "confidential" will (further) open the floodgates to CIPA claims based on conversations between people and voice AI technology, which has become an invariable feature of our daily purchases and interactions.

### III.   ANY AMENDMENT TO THE COMPLAINT WOULD BE FUTILE.

For each and all of the above reasons, the Court should deny leave to amend. Plaintiff has no legitimate privacy concerns here, and her Complaint is trying to squeeze a square-peg of normal communication into the round-hole of CIPA. No amendment, moreover, could cure the dispositive defects that infect Plaintiff's pleading, which itself establishes that there are no CIPA violations here. The way that Defendant's voice AI system works, in Plaintiff's own words, defeats the ability to maintain a CIPA complaint against Defendant. Therefore, dismissal with prejudice is necessary. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).

### CONCLUSION

For the reasons set forth in ConverseNow's MTD and herein, ConverseNow respectfully requests that the Court dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted, with prejudice.

Respectfully submitted,

Dated: May 16, 2025         SILICON VALLEY LAW GROUP

By: */s/ Stephen S. Wu*
    Stephen S. Wu
    Marc G. van Niekerk
    Attorneys for Defendant
    CONVERSENOW TECHNOLOGIES, INC.

ROETZEL & ANDRESS, LPA
    Hillard M. Sterling (admitted pro hac vice)
    Karman S. Bains (admitted pro hac vice)
    Attorneys for Defendant
    CONVERSENOW TECHNOLOGIES, INC.