UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZA TAYLOR,<br><br>       Plaintiff,<br><br>    v.<br><br>CONVERSENOW TECHNOLOGIES, INC.,<br><br>       Defendant. | Case No. 25-cv-00990-SI<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 21 |

Defendant ConverseNow Technologies, Inc. has moved to dismiss plaintiff Eliza Taylor's class action complaint. Pursuant to Civil Local Rule 7-1(b), the Court found this matter appropriate for resolution without oral argument and vacated the hearing. For the reasons set forth below, the Court DENIES defendant's motion.

**BACKGROUND**

Plaintiff brings a putative class action against ConverseNow for violating the California Invasion of Privacy Act (CIPA), California Penal Code sections 631 and 632. ConverseNow provides a "software as a service" that allows restaurants to process customer phone calls using an artificial intelligence virtual assistant. Dkt. No. 1 ("Compl.") ¶¶ 9, 18-21. ConverseNow operates across more than a thousand stores in 43 states and "processes millions of live conversations each month." *Id.* ¶¶ 9, 19.

ConverseNow's website states that the "voice AI assistants automatically answer every call that comes in and accurately records guest orders in real-time," then send those orders to the restaurant for preparation. *Id.* ¶¶ 21, 29. Live agents may listen in on the calls to "put the finishing

1   touches on complex orders when necessary" and to help the AI system learn how to handle similar
2   future orders. *Id*. ¶ 22.

3   Beyond providing benefits for its customers, plaintiff alleges that ConverseNow itself
4   benefits from the calls because, per ConverseNow's website, "by processing millions of live
5   conversations each month, our self-learning system evolves even faster every day to improve the
6   guest experience for new and existing partners alike." *Id*. ¶ 24. Plaintiff alleges that ConverseNow's
7   continued sales and marketing success relies on this ability to improve its software. *Id*. ¶¶ 27-28.
8   Moreover, the company's privacy policy states that it uses the information to "improv[e] our
9   ordering platform, advertisements, products, and services." *Id.* ¶ 44.

10   One of ConverseNow's partners is the pizza chain Domino's. *Id.* ¶ 32. ConverseNow has
11   technology "custom-tailored for Domino's with quick and easy setup" that integrates directly with
12   Domino's data software and phone system. *Id.* ¶¶ 32-33. Plaintiff Taylor, an Oakland, California
13   resident, placed a delivery order at the Domino's located in Delano, California, a location employing
14   ConverseNow's voice AI technology. *Id*. ¶ 6. When Taylor called, an automated voice answered
15   saying, "Thank you for calling Domino's. How can I help you today?" *Id*. Taylor placed her order
16   and provided her name, address, and credit card information. *Id*. ¶¶ 6-7. Taylor believed that
17   Domino's was the only other party on the call when she provided her "personal and confidential
18   information." *Id*. ¶ 7. Taylor did not know the call "was being intercepted in real time and
19   wiretapped by Defendant ConverseNow." *Id*. ¶ 6.

20   Plaintiff alleges that when calling a store that uses ConverseNow's technology, defendant
21   "intercepts and redirects the call to its servers for recording." *Id*. ¶ 35. "Within seconds, a virtual
22   assistant introduces themselves using their 'name' stating they are an employee of the store location
23   the customer is calling and asks the customer what they would like to order today." *Id*. ¶ 36.
24   Defendant's virtual assistant confirms the order and delivery address then takes the customer's
25   payment information. *Id*. ¶¶ 36-37.

26   Taylor alleges that the caller is not informed that ConverseNow is a party to the call. *Id*.
27   ¶ 38. Restaurants like Domino's "fail to pursue or obtain prior consent, express or otherwise, from
28   callers prior to allowing Defendant to record, examine, intercept, collect, and analyze the content of

customers' conversations." *Id.* ¶ 41. ConverseNow's Terms and Conditions for restaurants "provides that the [restaurants] 'may not represent or imply to others that [their] Customer Data is in any way provided, sponsored, or endorsed by ConverseNow.'" *Id.* ¶ 42. ConverseNow defines "Customer Data" as "any and all information and content that a user submits to, or uses with, the Platform . . . ." *Id.*

Taylor alleges that "[i]n sum, ConverseNow has the capability to use caller communications to (i) improve its own products and services; (ii) develop new ConverseNow products and services; and (iii) analyze customers' communications to assist with avoiding the intervention of restaurant staff in the order process." *Id.* ¶ 31.

Plaintiff filed this action on January 30, 2025. *See* Compl. ConverseNow filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on March 24, 2025. Dkt. No. 21 ("Mot."). The Court granted multiple stipulations for an extended briefing schedule. Dkt. Nos. 17, 30, 32. Plaintiff opposed the motion on April 23, 2025, Dkt. No. 28 ("Opp'n"), and defendant replied on May 16, 2025, Dkt. No. 33.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory,

3

unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

# DISCUSSION

## I. Section 631

California Penal Code section 631 creates four alternative avenues of liability for any person

> [1] who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or
>
> [2] who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or
>
> [3] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or
>
> [4] who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section . . . .

Cal. Pen. Code § 631(a) (subdivisions added for clarity); *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 897 (N.D. Cal. 2023). The third clause requires proving a violation of the first or second clauses. *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020). Otherwise, these clauses are independent bases for liability and a section 631 claim survives if a plaintiff plausibly alleges a defendant committed any of the prohibited actions. Here, plaintiff alleges violations of the first three clauses of the statute. Compl. ¶¶ 57-72.

4

The parties dispute whether defendant is a third party subject to the law or a party to the conversation exempt from the law; whether defendant receives an independent benefit from its use of data; whether defendant acted with the requisite intent; and whether defendant "intercepted" communications in "real-time." *See* Mot. at 13-19; Opp'n at 2-10. The Court considers each argument in turn.

### A.  Third Party Status and Use of Data

The parties dispute whether defendant is a third party to the conversation between Domino's and its customers because California exempts parties to a conversation from liability under section 631. Two California court opinions are widely cited to explain this distinction. In *Rogers v. Ulrich*, the defendant recorded his conversation with the plaintiff using a tape recorder jack, then later played the recording for other individuals. 125 Cal. Rptr. 306, 307 (Ct. App. 1975). The court held that the plaintiff could not make a case under the statute because "[i]t is never a secret to one party to a conversation that the other party is listening to the conversation; only a third party can listen secretly to a private conversation." *Id*. at 309. In *Ribas v. Clark*, the defendant surreptitiously listened to a telephone conversation between the plaintiff and the plaintiff's ex-wife at the ex-wife's request. 696 P.2d 637, 639 (Cal. 1985). The court held that the complaint established a prima facie violation because the defendant eavesdropped on the conversation and "a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device." *Id.* at 640 (citation omitted). Thus, in considering claims under section 631, courts must decide whether or not the defendant is a party to the conversation.

The parties recognize that courts have split on approaching the third-party issue between analyzing whether a defendant is an "extension" of a third party or has the "capability" of using the communications for an independent purpose.[1]  Opp'n at 2; Mot. at 14. The paradigm "extension" case is *Graham v. Noom, Inc. et al.*, where a co-defendant software company, FullStory, provided

---

[1] A third group of opinions focuses on whether the defendant service provider is simply a separate legal entity. *See*, *e.g., Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). The Court finds this approach less helpful.

5

1  Noom a "session replay" tool allowing Noom to play back a recording of the plaintiffs' "keystrokes,
2  mouse clicks, and page scrolling" when visiting Noom's website. 533 F. Supp. 3d 823, 828 (N.D.
3  Cal. 2021). The court held that FullStory was Noom's extension—not a third party—because it is
4  a "vendor that provides a software service that captures its clients' data, hosts it on FullStory's
5  servers, and allows the client to analyze their data . . . [and that] there are no allegations here that
6  FullStory intercepted and used the data itself." *Id*. at 832. The court considered FullStory's tool to
7  be like the tape recorder used by the defendant in *Rogers*. *Id.* Citing *Graham*, defendant here
8  contends that it is not a "third party," but rather it is Domino's "extension" because it acts as a tool
9  for Domino's business purposes. Mot. at 13-15.

10  The capability approach is championed in *Javier v. Assurance IQ, LLC*, where the court
11  found that similar session replay software violated section 631 because the software provider had
12  the capability of using its recording for another purpose. 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023).
13  The court rejected the extension approach because that approach interprets the statute's second
14  clause "based on the intentions and usage of the prospective third party," but that "swallows the
15  third prong" that penalizes the information's usage. *Id.* The court further clarified that "[t]he *Ribas*
16  Court did not consider the wife's friend's intentions or the use to which they put the information
17  they obtained." *Id*. The *Ribas* Court instead "emphasized the privacy concerns at issue with having
18  an 'unannounced second auditor' listening in on the call . . . ." *Id.* (quoting *Ribas*, 696 P.2d at 640).
19  "[A] growing number of district courts" have since agreed with this capability approach. *See Turner*
20  *v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1184 (N.D. Cal. 2024).

21  This Court agrees with the capability approach and finds sufficient allegations in the
22  complaint to consider defendant a third party under that approach. Defendant's website and privacy
23  policy explain that defendant uses information from the millions of calls it processes to "improv[e]
24  [its] ordering platform, advertisements, products, and services." *Id.* ¶¶ 24, 27-28, 44. Defendant's
25  Voice AI learns from each interaction and "continuously refines the underlying algorithms." *Id*.
26  ¶ 25. Live agents working behind the scenes sometimes aid in this process. *Id.* ¶¶ 22-23. Thus,
27  unlike the plaintiffs in *Graham*, plaintiff here alleges that defendant provides a software service to
28  its customers, and also uses the information collected to improve its own product. *See Graham*, 533

6

F. Supp. 3d at 832. The software's capabilities thus go "beyond the ordinary function of a tape recorder." *Javier*, 649 F. Supp. 3d at 900 (quoting *Yoon v. Lululemon*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021)).

In a more factually analogous case than *Graham*, a court reached the same conclusion. There, a plaintiff customer called Capital One's Customer Support Center and discussed the plaintiff's banking information. *Gladstone v. Amazon Web Services, Inc.*, 739 F. Supp. 3d 846, 850 (W.D. Wash. 2024). Capital One used Amazon Connect, a service that "record[s] and analyze[s] callers' voice and conversations" before providing the data to its customers like Capital One. *Id*. at 849. The plaintiff alleged that Amazon Connect can use the information to improve its own services, quoting its Service Terms that said it can use the content of the communications for "development and improvement of Amazon Connect ML Services" and "to develop and improve AWS and affiliate machine-learning and artificial intelligence technologies . . . ." *Id*. at 849-50. The court held that the plaintiff's allegations were sufficient because they "demonstrate that [Amazon Connect] has capabilities beyond that of a mere tape recorder, and there is no evidence that [Amazon Connect] is incapable of using the data for any other purpose." *Id*. at 855.

Similarly, in *Yockey v. Salesforce, Inc.*, the court held that the defendant's chat software rendered it a third party to communications between customers and companies using the software, because the plaintiff had amended the complaint to add allegations detailing how the defendant used the communications to train its AI models and improve or develop its own products. 745 F. Supp. 3d 945, 951 (N.D. Cal. 2024) (*Yockey II*).[2] Other courts have recently reached similar conclusions. *See Turner*, 735 F. Supp. 3d at 1185 (holding that defendant's use of AI voice recognition software to create a biometric voice print of a caller may use voice prints to improve its own product); *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 956-57 (E.D. Cal. 2025) (holding that software that listens to a call and produces data about the call's purpose and resolution could be used to improve the product).

---

[2] In an earlier order, the court had adopted the capability approach, but found the allegations in the operative complaint insufficient to establish "the capability to use these communications for any other purpose than furnishing them to Kaiser," a party to the chat. *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 973 (N.D. Cal. 2023) (*Yockey I*).

7

Beyond *Graham*, defendant cites several other cases in support of its argument that it is not a third party, but these cases are inapposite. Mot. at 13-14 (citing *Jones v. Tonal Sys.*, No. 3:23-cv-1267-JES-BGS, 2024 U.S. Dist. LEXIS 178056, at *18 (S.D. Cal. Sept. 30, 2024); *Cody v. Boscov's*, 658 F. Supp. 3d 779, 782 (C.D. Cal. 2023); *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1066-68 (C.D. Cal. 2023); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1082 (C.D. Cal. 2023)). Each case involved the use of online chat software, but the courts found that plaintiffs had not alleged that the software provider used the data from chats for any purpose other than to benefit its clients. In another case, the allegations that a chat software owner harvested chat transcripts were too "generalized and vague" to support liability under the capability approach. *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1002 (N.D. Cal. 2024); *see also Williams v. What If Holdings, LLC*, No. C 22-03780 WHA, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022) (holding a defendant not liable where there were no allegations that a software provider "affirmatively engages with that data in any way other than to store it"). By contrast, plaintiff here clearly alleges how ConverseNow uses customer phone calls to improve its AI product and expand its business.

In sum, the Court adopts the capability approach and considers defendant to be a third party to the conversation between plaintiff and Domino's because it may use details from that conversation for its own purpose.[3]

### B.   Interception

The second clause of section 631 requires that the defendant intercepts a communication when it is "in transit." Cal. Pen. Code § 631(a). Defendant contends that plaintiff "must plead specific facts explaining how the software works or how the interception actually occurs." Mot. at 16. Defendant further argues that plaintiff's allegations suggest it cannot intercept the

---

[3] The Court offers one note of clarification regarding the different clauses of section 631. Under the capability approach, a party may be liable as a third party under the first or second clause of section 631—wiretapping or intercepting communications in transit without consent—if it has the *capability* to use the information it learns for an outside purpose. A party is liable under the third clause if it violates one of the first two prongs and then *actually* uses the information received "in any manner, or for any purpose." Cal. Pen. Code § 631(a); *Turner*, 735 F. Supp. 3d at 1186.

1    communication because Domino's routes the phone call to its servers, making it a party to the
2    conversation. *Id.* at 17. Neither argument persuades the Court that the complaint fails on this point.
3          To determine whether an interception has occurred, courts sometimes look at "cases
4    analyzing the Wiretap Act as informative of section 631(a)." *Licea*, 659 F. Supp. 3d at 1084. The
5    Ninth Circuit analyzed the Wiretap Act to determine that interception "with respect to wire
6    communications" is "acquisition contemporaneous with transmission." *Konop v. Hawaiian
7    Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002).
8          Here, plaintiff's allegations establish how defendant intercepts communications in real-time.
9    Plaintiff believed she was calling Domino's and an automated voice answered by saying "Thank
10   you for calling Domino's." Compl. ¶ 6. Plaintiff continued to believe Domino's remained the other
11   party on the line, even when the call had been routed to defendant's AI voice assistants. *Id.* ¶ 7-8.
12   When a customer states she wants to place an order, defendant's AI assistant introduces themselves
13   "within seconds." *Id.* ¶¶ 35-36. These allegations are sufficient to state a claim that defendant
14   intercepts communications without consent in real time. And defendant's argument that it is a party
15   to the conversation because the callers do not reach Domino's is unavailing. According to the
16   complaint, the customers call Domino's and think they are talking with Domino's when the call has
17   in fact been redirected by defendant.
18         Defendant's cited case law does not convince the Court otherwise. *See* Mot. at 16. Many
19   of the cases involve online chat communications, which present factually distinct circumstances.
20   *See Cody v. Lacoste*, No. 8:23-cv-00235-SSS-DTBx, 2024 U.S. Dist. LEXIS 135843, at *5 (C.D.
21   Cal. July 30, 2024); *Ring LLC*, 718 F. Supp. 3d at 1001; *Esparza v. Gen. Digit. Inc.*, No. cv23-8223-
22   KK-AGRx, 2024 U.S. Dist. LEXIS 28132, at *10 (C.D. Cal. Jan. 16, 2024); *Swarts v. Home Depot*,
23   Inc., 689 F. Supp. 3d 732, 746 (N.D. Cal. 2023); *Valenzuela v. Keurig Green Mt., Inc.*, 674 F. Supp.
24   3d 751, 759 (C.D. Cal. 2023). Whether a third party pulls online chat communications into its own
25   servers in real time is a different question than whether a voice AI software intercepts a phone
26   conversation and directly engages with the caller.
27         In short, plaintiff has pled a plausible claim of interception in real time.
28

9

**C.    Intention**

Separately, defendant contends that plaintiff's allegations are deficient and conclusory regarding defendant's intent to tap into or intercept communications. Mot. at 19. The first clause of the statute requires a person to act "intentionally," while the second clause requires a person to act "willfully." Cal. Pen. Code § 631(a). Under the federal Electronic Communications Privacy Act (ECPA), to act intentionally is to act "purposefully and deliberately and not as a result of accident or mistake." *United States v. Christensen*, 828 F.3d 763, 774 (9th Cir. 2015). "Intent under CIPA is determined consistently with intent under ECPA . . . ." *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1079 (N.D. Cal. 2023).

Plaintiff argues that intent is not a required element, but plaintiff conflates the third-party capability inquiry with the underlying illegal actions in the statute. Plaintiff is correct that to prove a defendant is a third party to a conversation—and therefore not exempted from coverage under *Rogers*—a plaintiff need only show the capability to put the information to independent use, not an intent to do so. But once a defendant is established as a third party, plaintiff must show that defendant intended to intercept plaintiff's communications, in this case her phone call to Domino's.

Contrary to defendant's understanding of the complaint, plaintiff's allegations plausibly plead that ConverseNow intentionally intercepted and learned the contents of plaintiff's phone order to Domino's. Plaintiff alleges that "[b]y virtue of its business, Defendant intended to wiretap Plaintiff and members of the Classes by contracting with businesses such as Domino's to use its technology." Compl. ¶ 71. ConverseNow "custom-tailored" its technology specifically for Domino's existing software and phone systems. *Id.* ¶ 32. These allegations are sufficient to show that defendant did not stumble into recording the conversations by "accident or mistake." *See Christensen*, 828 F.3d at 774; *see also Gladstone*, 739 F. Supp. 3d at 860 (holding the complaint sufficiently pled intent where the software in question "is designed for the purpose of recording and analyzing communications between its customers (like Capital One) and consumers or other entities").

### D. Section 631 Liability Conclusion

Defendant's collective arguments that plaintiff has failed to state a claim under section 631 miss the mark. The complaint plausibly alleges that defendant's voice AI software violates at least the second clause of section 631. The Court thus DENIES defendant's motion to dismiss plaintiff's claim under section 631.

## II. Section 632

California Penal Code section 632 creates criminal liability for

> A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio. . . .

Cal. Penal Code § 632(a). In relevant part, the statute defines "confidential communication" as

> any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but exclud[ing] a communication made . . . in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.

*Id*. § 632(c). The California Supreme Court interpreted this language to mean "that a conversation is confidential under section 632 if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 41 P.3d 575, 576 (Cal. 2002).

Defendant asserts that plaintiff had no objectively reasonable expectation that their phone call to Domino's would not be recorded. Mot. at 19-22. Defendant flippantly suggests that "there is no privacy or confidentiality interest in pepperoni, sausage, or mushrooms." *Id.* at 22. Defendant relies on *Swarts v. Home Depot*, where the court found no expectation of confidentiality in an online chat with Home Depot representatives, distinguishing from a case involving a healthcare website and medical communications. 689 F. Supp. 3d at 747.

Unsurprisingly, plaintiff focuses on the sharing of her name, address, and credit card information—not her pizza toppings. Opp'n at 12. Plaintiff draws support from *Smith v. YETI*

11

*Coolers, LLC*, 754 F. Supp. 3d 933, 939 (N.D. Cal. 2024), where a third party payment processor took customers' personal information and financial information and used it in a fraud prevention tool. There, the court remarked that the confidentiality question is a "fact-intensive inquiry that is often too difficult to resolve at the pleadings stage." *Id.* at 943 (internal quotation marks and citation omitted). The court concluded that "[P]laintiff has plausibly alleged that the sensitive financial information being recorded is the type that could be reasonably considered confidential." *Id.* In another case, the plaintiff alleged that he shared credit card information with customer service representatives over the phone without being told that the conversation was being recorded. *Bales v. Sierra Trading Post, Inc.*, No. 13CV1894 JM KSC, 2013 WL 6244529, at *1 (S.D. Cal. Dec. 3, 2013). The court there likewise concluded that disclosing "personal financial information is sufficient to establish a confidential communication for purposes of § 632." *Id.* at *3.

A review of the first amended complaint in *Swarts* indicates that this case falls closer to *Smith* and *Bales* than *Swarts*. The content of the communications between plaintiff Swarts and Home Depot involved "inquiries related to home improvement products he had purchased, whether those products could be exchanged, and pending orders for products which were available for sale on Defendant's website." *Swarts v. Home Depot*, Case No. 4:23-cv-00995-JST (N.D. Cal.), Dkt. No. 17 (First Amended Complaint) ¶ 17. Nowhere in the complaint did plaintiff allege sharing personal financial information.

The Court agrees with the opinions in *Smith* and *Bales* that alleging the sharing of personally identifiable information and personal financial information is sufficient to allege a confidential communication took place, at least at the pleading stage. The Court therefore DENIES defendant's motion to dismiss plaintiff's claim under section 632.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendant's motion to dismiss.

The Court re-sets the initial management conference to **August 29, 2025, at 2:30 p.m.,** to

///

be held over Zoom videoconference. The parties' joint case management statement is due one week prior.

**IT IS SO ORDERED**.

Dated: August 11, 2025

_____
SUSAN ILLSTON
United States District Judge